589 P.2d 430

**The STATE of Arizona, Appellee,**

v.

**Dennis Ray WOODS, Appellant.**

No. 4356.

Supreme Court of Arizona,
In Banc.

Jan. 3, 1979.

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen., by William J. Schafer III and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by the defendant Dennis Ray Woods from a conviction and judgment of guilt to the crime of second degree burglary, A.R.S. §§ 13–301 and 302, with a prior burglary conviction. Defendant was sentenced to serve not less than two nor more than seven years in the Arizona State Prison. We have jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

We are asked to address four issues on appeal:

1. Should the trial court have suppressed certain items as being the result of an illegal search and seizure?
2. Was it error to admit certain items as being evidence of prior bad acts?
3. Did the prosecution improperly destroy or withhold evidence?
4. Does the evidence support a conviction for burglary?

The facts necessary for a determination of this case are as follows. At about 8:30 p.m. on 4 May 1977, two plainclothes police officers, in an unmarked police car, were stopped in the parking lot adjacent to Pettett's Department Store in Phoenix, Arizona. The officers observed the defendant exit Pettett's Department Store and in a loping run go past a van and then take a circular route eventually returning to the van parked a few feet from the officers' car. As he was running, the defendant held his left arm to his side as if he were carrying something inside the jacket he was wearing. Defendant got into the van and the van started moving. Three other subjects exited the store at this time and turned and walked to the van. One of the three, a woman, got into the van and the two others walked away. The officers followed the van in their unmarked vehicle to a cul-de-sac in a residential area where the van stopped. The officers stopped behind the van, got out, approached the van, and yelled that they were police officers. The van started up and sped away with its lights off.

The officers followed the van through several residential streets while radioing for additional help. During this time, the pursuing officers saw several items thrown out of the van. The van was stopped by a marked police vehicle.

When the defendant and other were exiting the car, the arresting officer noticed several items in plain view in the van, including numerous bottles of liquor, three C.B. radios, a hamburger cooker, several boxes of perfume, and one iron with a Skagg's Department Store tag attached. One of the pursuing officers retraced the route driven by the van and retrieved items he had seen thrown out of the van. Those items included several boxes containing perfume and a woman's pantsuit with a Pettett's Department Store tag.

Defendant was given his *Miranda* rights and he indicated he understood them. The arresting officer did not, however, interrogate the defendant at that time. Later defendant requested to talk with the arresting officer and voluntarily stated that he did not steal the pantsuit, but that he was the "dummy" for the group. When the officer asked what he meant, the defendant stated that his job was to attract attention to himself by pretending to steal something while the others in the group actually stole merchandise. The defendant was charged and convicted of burglary.

## 1. SEARCH AND SEIZURE

Defendant initially urges that the arresting officers had neither a search warrant nor probable cause to support defendant's arrest and that the items seized and certain statements made by the defendant should therefore have been suppressed from introduction into evidence as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We do not agree.

■ The facts indicate that the officers had reason to make an investigative stop. The officers observed the defendant running from the store while he appeared to be holding something under the jacket he was wearing on a warm evening. The defendant ran a lengthy circuitous route back to the van parked a few feet from the officers. The defendant was looking around the parking lot as he entered the van. Three others soon exited the store and the van picked one of them up on another side of the store. Following this, a single man, later identified as the store manager, appeared at the door through which defendant and others had previously exited and appeared to be looking for someone. In the similar case of *State v. Lelevier,* 116 Ariz. 37, 567 P.2d 783 (1977), we cited language from *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the proposition that

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906–07.

Our court has interpreted "appropriate circumstances" to mean

"a reasonable suspicion * * * that 'some activity out of the ordinary' is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. (citation omitted)" *State v. Hocker,* 113 Ariz. 450, 457, 556 P.2d 784, 791 (1976).

■ At the time the officers followed the van into the cul-de-sac, they had reasonable suspicion of possible criminal activity to support their investigation. *Terry v. Ohio,* supra. After the van had fled and the items were thrown out of the van, there was probable cause not only to stop and investigate, but also to detain and arrest the defendant. Probable cause to support a warrantless arrest exists

"if the arresting officer knows facts and circumstances sufficient to justify the belief of a reasonable and prudent man that a crime has been committed by the individual arrested." *State v. Miller,* 112 Ariz. 95, 97, 537 P.2d 965, 967 (1975).

Defendant's arrest was lawful and supported by probable cause. The items observed by the officers in plain view were properly admitted into evidence, *State v. Childs,* 110 Ariz. 389, 519 P.2d 854 (1974), as were defendant's statements made after he had been properly advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We find no error.

## 2. PRIOR CRIMES

■ Defendant next asserts that it was reversible error for the trial court to have admitted an electric iron and several bottles of perfume into evidence as suggesting that the defendant had committed prior crimes. We have no difficulty with the bottles of perfume thrown from the van. They are part of the complete story of the crime. *State v. Evans,* 110 Ariz. 380, 519 P.2d 182 (1974). We have much difficulty with the iron, however. The iron was found in the van and had a Skagg's store tag on it. In admitting the iron into evidence, the prosecutor asked the following questions:

"Q  Will you state your name, please?
"A  Joan Landauer.
"Q  Where do you work, Ma'am?
"A  Skagg's Drug Stores Incorporated.
"Q  What do you do for them?
"A  I'm a security officer.
"Q  Were you a security officer with them on May 4th, 1977?
"A  Yes, I was.

   *    *    *    *    *    *

"Q  In your capacity as a security officer for the Skagg's stores, are you personally aware of the policies of the store regarding the sales of items?

"A  For the most part, yes, I am.

"Q  Do you know the policy regarding the sale of the display items at the store from where that iron came?

"A  Yes, I do."

The witness from Skagg's then testified that the display tag attached to the iron indicated the particular store the iron came from and that it was on display, meaning that it would not have been sold unless the store had no others in stock. The witness testified that she visited the store from where the iron came the day after defendant's arrest and found that the store was well stocked with irons. Standing alone, this does not indicate that the iron was, in fact, stolen. The State contends, however, that this evidence, together with defendant's statement that he was the "dummy" of the group that engaged in shoplifting at various stores, forms part of the "complete story" of the conduct of defendant and his companions. We do not agree.

■ Evidence of prior crimes is generally not relevant and inadmissible in a trial for a later crime. *State v. Martinez,* 67 Ariz. 389, 198 P.2d 115 (1948). There are exceptions to this rule and evidence of prior crimes may be admissible to show intent, motive, or common scheme or plan when the evidence also establishes the prior crimes, the defendant's participation in the prior crimes, and the connection to the present crime for which the defendant is being tried.

We have stated:

"The state argues that the Bayless tag fits into either the 'intent/motive' exception, or the 'common scheme or plan' exception. The state fails to point out, however, that there is no additional requirement for these exceptions to operate:

'Before evidence of the commission of other crimes by accused is admitted, the trial court should satisfy itself that the evidence substantially establishes the other crimes, accused's connection therewith, and their connection with the offense for which accused is being tried.

*    *    *    *    *    *

'Evidence of a vague and uncertain character * * * should not be admitted under any pretense whatever; nor is * * * mere suspicion, or proof of a suspicious circumstance, sufficient.' 22A C.J.S. Criminal Law § 690.

"More succinctly, the Arizona rule is that before the evidence of the separate crime or offense may be admitted, there must be evidence of that other crime substantial enough to take that case to a jury, *State v. Mitchell,* supra [112 Ariz. 592, 545 P.2d 49], although it need not be proof beyond a reasonable doubt. *State v. Hughes,* 102 Ariz. 118, 426 P.2d 386 (1967). A Bayless meat price tag, in and of itself, is insufficient proof of anything to take to a jury. Mere possession of a meat price tag shows no offense; in the context of this fact situation, it is merely a 'suspicious circumstance.' 22A C.J.S., supra." *State v. Marahrens,* 114 Ariz. 304, 307, 560 P.2d 1211, 1214 (1977).

■ It is clear from a reading of the record that the evidence concerning the iron was not sufficient evidence of a crime to take the case to the jury. The van did not belong to the defendant and how the iron got there is not known. The evidence of the prior crime, if any, was not sufficiently linked with the defendant or to the offense charged to warrant the iron's admission into evidence. It was, at most, "vague and uncertain." The admission of the iron together with the identity of the witness from Skagg's as a "security officer" made the admission of the iron all the more prejudicial. We believe it was reversible error to admit the iron into evidence.

### 3.  WITHHOLDING OF EVIDENCE

■ Defendant next urges that the failure to furnish defense counsel with scratch notes made by Officer Hopper during an

interview with the defendant was error. The officer testified at trial that his scratch notes had been substantially incorporated into his department reports which, in turn, had been fully disclosed to defense counsel. Rule 15.4(a)(2), Rules of Criminal Procedure, 17 A.R.S., applies to this situation:

> "*Superceded Notes.* Handwritten notes which have been substantially incorporated into a statement shall no longer themselves be considered a statement."

The Comment to this rule specifically addresses our situation:

> "The exception for superceded notes in Rule 15.4(a)(2) is added as a protection for the attorney and law enforcement officer to alleviate the bookkeeping problem of retaining every scrap of notes taken in a case, and to prevent cross-examination on 'jottings' contained in a notebook. However, the exception applies only if such notes have been substantially embodied in a formal report which itself qualifies as a statement."

We find no error.

## 4. DOES THE EVIDENCE SUPPORT A CONVICTION FOR BURGLARY?

■ Defendant finally urges that there was insufficient evidence of defendant's intent introduced at trial to support a conviction of burglary. We do not agree.

A charge of burglary requires proof of an entry with the intent to commit theft or other felony. A.R.S. § 13–302 reads as follows:

> "A. A person entering a building, dwelling, house, office, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, garage, tent, vessel, railroad car or motor vehicle, trailer or semitrailer, with intent to commit grand or petty theft, or any felony, and a person entering an outhouse or other building not enumerated in this section with intent to commit a felony, is guilty of burglary."

We have read the record and particularly defendant's statements and believe there was adequate evidence of defendant's intent from which a jury could determine that the defendant had violated the statute.

We then find no failure of proof of defendant's guilt which would necessitate a reversal rather than a remand for new trial. See *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). We find no error.

Reversed and remanded for new trial.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.