597 P.2d 532

**STATE of Arizona, Appellee,**

v.

**Darold Duane REINHOLD, Appellant.**

**No. 4526.**

Supreme Court of Arizona,
In Banc.

May 31, 1979.

Rehearing Denied July 10, 1979.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen., by William J. Schafer, III, Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

William J. Friedl, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

This is an appeal by Darold Duane Reinhold from his convictions for kidnapping, first degree rape and lewd and lascivious acts. Judgments affirmed.

On September 30, 1977, the prosecuting witness, victim of the criminal offenses charged, drove her car into the parking lot of her apartment complex. When she opened the car door, she was met by Reinhold, who struck her in the face and forced his way into the car. Thereafter he forced her to engage in acts of sexual intercourse as well as lewd sexual acts. Eventually Reinhold compelled her to go to her apartment, where he fell asleep. She then called her father, who called the police. Reinhold was arrested when the police went to the victim's apartment.

At a voluntariness hearing held on June 12, 1978, a police officer testified:

"Q. Did you say anything to the defendant as you entered the room and observed him lying on the bed [in the victim's apartment]?

A. We entered the room. Officer Gary Branz stood on the door side of the bed, I walked around to the other side of the bed where I could see the subject's hands and the fact that he did appear to be sleeping—I woke him.

Q. How did you wake him?

A. I believe I shook him by the shoulder.

Q. Did he say anything at that time or did you say anything?

A. He looked up and I said, 'What's your name?'

And, he said, 'Darold.'

Q. Did he appear to be sleeping at that time?

A. No. From when I shook him and he looked up he appeared to be fully awake.

Q. Did you pause for any period of time to make sure that he was awake?

A. Yes, I shook him. I said, 'What's your name?'

He said, 'Darold.' He looked at me. He looked across the bed at the other officer and he asked me, he said, 'What's going on?'

Q. What did you say?

A. I asked—I said, 'Do you know the girl that lives here?'

And, he said, 'Yes.'

Q. Any further conversation?

A. Yes. I said, 'What's her name?'

And, he didn't respond.

Q. And any further conversation?

A. At this time I told the subject that we were there because the girl that lived there had claimed that he had raped her and that I wanted to question him about this matter, but before I did so I wanted him to understand what the charges were against him.

Q. What did you do at that time?

A. At that time I read him his rights from a standard Miranda rights card. I asked him the two questions, you know, 'Will you voluntarily answer my questions?'

He replied, 'Yeah.'

I asked him if he understood his rights —yeah,—I'm sorry—will you voluntarily answer my questions, and he said, 'Sure.'

\*      \*      \*      \*      \*      \*

Q. Did you have a further conversation with him after you informed him of his Miranda rights?

A. Yes, after the rights. And I asked him again, I said, I said, 'Do you know the girl that lives here?'

And he said, 'Yes.'

And, I asked again, 'What is her name?' At which time he didn't respond. I asked him, 'Have you had sex with her?'

He stated, 'Yes.'"

The trial court suppressed the statements made by appellant before the *Miranda*[1] warnings were given but permitted the officer to testify to the conversation he had with appellant after the warnings were given.

Appellant urges the entire conversation should have been suppressed, arguing that when the officer testified that Reinhold did not respond to his question concerning the victim's name, it was an improper comment on his exercise of his Fifth Amendment right to remain silent.

■ It is a general rule that the State may not place before the jury testimony that a defendant has exercised his right to remain silent after arrest. See *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Ward*, 112 Ariz. 391, 542 P.2d 816 (1975). But it is clear here from the quoted testimony that appellant did not invoke his right to remain silent. He answered all questions posed by the police officer except one; he refused to tell the officers the victim's name. See *State v. Tuzon*, 118 Ariz. 205, 575 P.2d 1231 (1978).

■ Appellant argues that the answers obtained before the giving of the *Miranda* warnings tainted the admissions made after the warnings were given, and, therefore, those admissions should have been suppressed as "fruits of the poisonous tree."[2]

The facts in this case establish that the police officers were met on the street by the victim who was "excited" and "talking fast." She told the officers of the events of the night, and claimed the man was still in her apartment. The officers entered the apartment and found appellant asleep in the victim's bed. The questions asked by the officer, whether appellant knew the complainant and her name, were not accusatory in nature and were merely in furtherance of a preliminary investigation. The questions asked prior to the *Miranda* warnings were proper given the unusual fact situation presented by this case. Cf. *State v. Landrum*, 112 Ariz. 555, 544 P.2d 664 (1976); *State v. Starr*, 119 Ariz. 472, 581 P.2d 706 (App.1978); *State v. Kennedy*, 116 Ariz. 566, 570 P.2d 508 (App.1977). Because the questions and answers given prior to the *Miranda* warnings were admissible at trial, appellant's claim of error that his statements were tainted as "fruit of the poisonous tree" has no legal basis.

■ During cross-examination of the victim, the defense attempted to obtain an admission from her that she had a prior sexual relationship with one Pete Morales. Morales was called as a defense witness and was questioned about his relationship with the victim. The trial court, pursuant to our decision in *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 545 P.2d 946 (1976), refused to allow this testimony. Appellant claims that the possible prejudicial effect of this testimony was outweighed by its probative value, and that he was denied a fair trial since he was denied the opportunity to show that the victim claimed she was raped "to get back at Pete Morales through" appellant.

The victim testified that she worked under Morales' supervision at St. Luke's Hospital for seven years, during which time they developed "a boyfriend-girlfriend relationship." Morales' wife was unaware of their relationship, even though at one time the victim lived next door to Morales in a duplex owned by Morales. The victim also testified that she saw Morales near her apartment just before she was abducted, that Morales called her later that night, and that she told the police she wanted both Morales and appellant prosecuted.

When Morales was called to the stand, he testified that his relationship with the victim had developed into a sexual one. The

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. See, e.g., *United States v. Nash*, 563 F.2d 1166 (5th Cir. 1977); *Fisher v. Scafati*, 439 F.2d 307 (1st Cir.), *cert. denied*, 403 U.S. 939, 91 S.Ct. 2256, 29 L.Ed.2d 719 (1971).

prosecutor objected. The trial court, after admonishing appellant's counsel, sustained the objection, ordered the answer stricken, and instructed the jury to disregard the statement. Morales later testified that he terminated the victim's employment, but was forced to rehire her after "she threatened to expose" him "at work and at home."

It is apparent from the record that the relationship between Morales and the prosecutrix was clearly presented, and that any exploration of the sexual relations between the two would have little further probative value. Moreover, appellant failed to comply with the procedural prerequisites of *Pope*.[3] We hold that it was within the trial court's discretion to exclude further evidence of the victim's relationship with Morales.

The victim also testified:

"A. He had asked me if I had any money and I told him I did and if he wouldn't hurt me he could take it.

Q. What did he say?

A. He laughed and said that he was—I can't answer that way.

Q. You say that he made a reaction?

A. He laughed and said that he was a robber—

MR. FRIEDL: May we approach the bench?

THE COURT: You may."

Appellant's counsel moved for a mistrial, claiming that the victim's reference to appellant as a robber improperly brought before the jury appellant's prior criminal record.

The prosecuting attorney explained to the court other circumstances which had occurred:

"He instructed her to go out to a tree which was located near the vehicle. That she was on her way out. She observed that he had her wallet, her purse in his hand. That she was instructed to go out to the tree. She was instructed to turn around. She turned back around after approximately one minute and observed that he had her billfold in his hand. He called her back to the car. She observed him with her money, two 20s and one 10 and some change, and then asked her whether or not she had anymore monies and had her go through her billfold with him.

THE COURT: What else? Anything by way of response?

[PROSECUTOR]: No."

The following colloquy then took place:

"THE COURT: Mr. Friedl, I think even if it is the defendant's own statement, if he states that he has been previously found guilty of a crime or in fact did commit a previous crime, it should not come in. I am not sure I understand what this statement means in light of the other evidence, 'He laughed and said that he was a robber.'

Did he mean by that that he was then and there being a robber, in that he intended at that moment to take her money?

MR. FRIEDL: Well—

THE COURT: There is no elaboration. It stopped like that. So, I don't know that it has to be interpreted as meaning that he had been previously held to have

---

**3.** In *Pope*, we said:

"In these and other instances in which the evidence concerning unchastity is alleged to be sufficiently probative to compel its admission despite its inflammatory effect, a hearing should be held by the court outside the presence of the jury prior to the presentation of the evidence. This hearing should be preceded by a written motion or offer of proof on the record, made without the jury's knowledge, which should include the matters sought to be proved by either cross-examination of the complaining witness or by other witnesses. Either of these should make reference to specific records or documents which may be relied upon. If the defendant alleges that proffered evidence falls into one of the above exceptions, the trial court should allow its admission if it is not too remote and appears credible." 113 Ariz. at 29, 545 P.2d at 953.

The Court of Appeals, in *State v. Quinn*, 121 Ariz. 582, 592 P.2d 778 (App.1978), held that failure to request a *Pope* hearing justifies excluding cross-examination of a rape victim's prior sexual conduct.

committed an offense or that he indeed, he was referring to some other offense other than this thing that is happening right now.

MR. FRIEDL: I think it is clear that he is a robber, has not robbed her at this point yet, meaning that he is—

THE COURT: If the testimony that is to follow is as described by the State, I do have reason to think that isn't what she is going to say. I mean, is that not part of the evidence that you expect?

MR. FRIEDL: He is not charged with robbery. What makes it worse is her comment after saying that, not in response to a question.

THE COURT: I cannot—

MR. FRIEDL: She looks at the prosecutor, clearly gave the appearance that he had gone over it before, which they had, for her not to say that, you know. It highlights it. It brings more attention to it.

THE COURT: It is of concern to me too. Now, if there were no evidence that he took anything of hers, I think clearly a mistrial but in the context of what I am informed is going to be the defense, I am not so sure. I mean, if what he is doing is describing what he intends to do and then does it, I hardly think it should be interpreted any way other than a description of what he says he is going to do."

The trial court's assessment of the testimony was correct.

■■ It is a general rule that evidence tending to show the defendant has committed certain bad acts, other than those for which he is now on trial, is inadmissible. *State v. Woods*, 121 Ariz. 187, 589 P.2d 430 (1979); *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978), and cases cited. A well recognized exception to the rule is that evidence of circumstances which complete the story of the crime are admissible, even though it is revealed that other criminal offenses have been committed. *See State v. Woods*, supra; *State v. Evans*, 110 Ariz. 380, 519 P.2d 182 (1974), and cases cited.

■ In this case, the theft of the victim's money completed the story of the crime.

The victim testified appellant used the money to buy cigarettes, beer, and other items before they returned to her apartment. Appellant's motion for mistrial was properly denied.

■ After the jury had been selected, but before trial, the trial court learned that two of the impaneled jurors knew the victim's mother. A hearing was thereafter held to determine whether they should continue to sit as jurors and the court denied appellant's motion to strike the jury panel. Appellant urges that the trial court's ruling constituted prejudicial error.

In *State v. Rose*, supra, we said:

"It is the trial court and not this Court which is in a position to determine first hand whether a juror can render a fair and impartial verdict. A clear showing of an abuse of discretion is, therefore, needed to overrule the trial judge's determination. *State v. Duke*, 110 Ariz. 320, 518 P.2d 570 (1974); *State v. Narten*, 99 Ariz. 116, 407 P.2d 81 (1965); *State v. Sorrell*, 95 Ariz. 220, 388 P.2d 429 (1964). The defendant must show the jury has been biased or that the selection process was somehow discriminatory. *State v. Stolze*, 112 Ariz. 124, 539 P.2d 881 (1975)." 121 Ariz. at 139, 589 P.2d at 13.

The interrogation of the jurors revealed that the victim's mother was a reading consultant for the school district in which the jurors worked as teachers. Neither of the jurors knew the victim's mother as more than a business acquaintance, and both were unaware that she even had a daughter until it was brought to their attention after the jury's selection. The jurors stated that they believed they could serve as fair and impartial jurors in the case, and would not feel uncomfortable in seeing the victim's mother again if they rendered a verdict of not guilty. We find no error in the court's ruling.

■ Appellant contends that the trial court committed prejudicial error when it refused to give six of his requested jury instructions.

Appellant asked the court to instruct the jury:

"A charge such as that made against the Defendant in this case is one which is easily made and, once made, difficult to defend against, even if the person accused is innocent.

Therefore, the law requires that you examine the testimony of the female person named in the indictment with great caution." (Defendant's Requested Instruction No. 7.)

The trial court refused to give this instruction, and instead charged the jury:

"You must decide the accuracy of each witness' testimony. Take into account such things as the witness' ability and opportunity to observe, the witness' manner while testifying, any motive or prejudices the witness might have, and any inconsistent statements the witness might have made. Consider the witness' testimony in light of all of the evidence in the case."

Appellant submits that when the defense is consent and there is no corroborative evidence to bolster the victim's testimony, the defendant is entitled to the proposed instruction or its equivalent. In support of this proposition, he relies on *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied*, 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975).

In *Kelly*, "[t]he defense was not consent but alibi, or that the event never took place. Evidence was presented that corroborated the testimony of the victim." 111 Ariz. at 191, 526 P.2d at 730. In those circumstances, it was held that it was not error for the court to refuse to give the cautionary instruction similar to the one requested in the instant case.

Later, in *State v. Settle*, 111 Ariz. 394, 396, 531 P.2d 151, 153 (1975), we said:

"Defense counsel sought to have the jury given a cautionary instruction to the effect that in a rape case, the testimony of the prosecuting witness should be examined with particular care. This instruction was in accord with *State v. Bradley*, 72 Ariz. 16, 230 P.2d 216 (1951).

The trial judge refused the instruction, but gave instructions concerning juror prejudice and sympathy, the credibility of witnesses, the presumption of innocence, and reasonable doubt. This was entirely proper.

It is the judge's duty to instruct the jury upon the law concerning the facts of the case and upon 'matters vital to a proper consideration of the evidence.' *State v. Evans*, 109 Ariz. 491, 493, 512 P.2d 1225, 1227 (1973). A cautionary instruction such as the one sought by the defendant is a suggestion to the jury to particularly question the testimony of the prosecuting witness and is a comment upon the weight of the evidence. Such an expression of personal opinion by the judge concerning the facts of the case is contrary to Article 6, section 27, of the Arizona Constitution, A.R.S. In this opinion, we are in accord with recent cases from the state of Washington interpreting an identical provision of their state constitution. *State v. Wilder*, 4 Wash.App. 850, 486 P.2d 319 (1971); *State v. Wampler*, 3 Wash.App. 378, 475 P.2d 316 (1970); *State v. Mellis*, 2 Wash. App. 859, 470 P.2d 558 (1970). *State v. Bradley, supra,* is hereby overruled to the extent that it deviates from this position."

The refusal to give Defendant's Requested Instruction No. 7 was not error.

Appellant also requested the following instructions, which were declined by the court.

"The absence of consent is necessary for the crime of rape, and even where the resistance is genuine and vigorous in the beginning, if the physical contact arouses the passion of the woman to the extent that she willingly yields herself to the sexual act before penetration has been accomplished, or if she yields before this time for any other reason, it is not rape." (Defendant's Requested Instruction No. 6.)

"In the absence of intimidation, the female must resist to the utmost of her ability, and such resistance must continue

till the offense is complete, or it is not rape." (Defendant's Requested Instruction No. 3.)

■ We discussed identical instructions in *State v. Denton*, 101 Ariz. 455, 420 P.2d 930 (1966). There we said that Defendant's Requested Instruction No. 3 "applies only where there is a conflict in the evidence as to the 'absence of intimidation.'" 101 Ariz. at 458, 420 P.2d at 933. In the instant case, there was uncontroverted evidence that appellant physically abused the victim and that she feared for her safety. It was not error to refuse the instruction.

■ In reference to Defendant's Requested Instruction No. 6, we said in *Denton*:

"The * * * requested instruction is, where emphasized, an erroneous statement of the law. A defendant remains guilty of rape though the woman yields for reasons other than the fact that she becomes aroused and consents. For example, consent induced by force or fear and intimidation does not amount to consent in law and does not prevent the intercourse from being rape. *Willingham v. State*, 201 Ga. 339, 39 S.E.2d 751. The first part of the requested instruction correctly states that the absence of consent is necessary for the crime of rape. However, the trial court had previously instructed the jury on that principle and did not err in refusing to give a cumulative instruction. *State v. Sorrell*, 95 Ariz. 220, 388 P.2d 429. It is well settled that the trial court need not give requested instructions that are incorrect or inappli-

cable. *State v. Colvin*, 81 Ariz. 388, 307 P.2d 98; *State v. Lovell*, 97 Ariz. 269, 399 P.2d 674." 101 Ariz. at 459, 420 P.2d at 934.

In this case, there was evidence showing intimidation; therefore, Defendant's Requested Instruction No. 6 was properly refused.

■ The trial court instructed the jury that:

"Rape in the first degree is an act of sexual intercourse with a woman, not the wife of the perpetrator, under either of the following circumstances:

A. Where the woman resists, but her resistance is overcome by force or violence; or

B. Where the woman is prevented from resisting by threats of immediate and great bodily harm accompanied by the apparent ability to carry out those threats.

Consent induced by force, or fear and intimidation, does not amount to consent in law, and does not prevent the intercourse from being rape. When a woman reasonably determines that she cannot resist without peril to her life or safety, no resistance is required, and if she submits to an act of sexual intercourse, induced by fear that it is necessary to save her from violence or death, her conduct under such circumstances does not constitute consent to the act."

We believe these instructions fairly and adequately informed the jury of the legal standards by which appellant's guilt or innocence was to be determined.[4]

4. Appellant requested that the two following instructions be given:

"The sexual act of intercourse must be committed against the will of the complainant. This is not merely a technical requirement. It must be against her actual will or it will not be considered rape. Consent given at any time prior to penetration deprives the subsequent intercourse, if any there may be, of its criminal character, regardless of how reluctantly it was given, or of how much force had theretofore been employed." (Defendant's Requested Instruction No. 4.)

"Resistance establishes two elements of the crime of rape; force and non-consent. These

are essential in every case in which the complainant has her mental and physical capacities intact. Resistance or opposition by mere words is never enough; the resistance must be by acts, and must be reasonably proportionate to the strength and opportunities of the woman. She must resist the consummation of the act of sexual intercourse and her resistance must be more than pretense." (Defendant's Requested Instruction No. 5.)

Both of these instructions clearly misstate the law. Defendant's Requested Instruction No. 4 ignores the fact that consent induced by intimidation is not valid. Defendant's Requested Instruction No. 5 is erroneous because it is well

█ Appellant argues that the trial court committed reversible error when it instructed the jury:

"The elements of the crime of kidnapping are as follows:

1. A person forceably takes any person against his or her will in this State and;

2. Carries him or her into another part of the same county.

The force required need not consist of using actual physical force or express threats. The taking is forcible where it is accomplished by giving orders that the victim feels compelled to obey because he or she fears harm or injury and provided the victim's fear or apprehension is reasonable under the circumstances."

It is appellant's position that the instruction omits any reference to consent as a defense as reflected by the opinion in the *Matter of Appeal in Maricopa County Juvenile Action No. J–72472S.*, 25 Ariz.App. 377, 543 P.2d 806 (1975).[5] He contends that the following instruction should have been given:

"Kidnapping must involve the taking away of a person by force or fear, against the will of the alleged victim, and hence consent is a complete defense.

The crime of kidnapping by its very nature cannot ordinarily be committed by an act to which a person, being capable in law of consenting, consents in a legally valid manner."

Appellant's position is without merit. The jury was informed that the taking must be against the victim's will. Appellant's requested instruction was cumulative, and it was not error to fail to submit it to the jury. See *State v. Stinson*, 105 Ariz. 174, 461 P.2d 472 (1969).

settled that resistance is not required when consent has been extracted through intimidation. *See State v. Kidwell*, 106 Ariz. 257, 475 P.2d 241 (1970); *State v. Denton, supra.*

Failure to give instructions which are not correct statements of the law and do not fit the facts of a case is not error. See *State v. Rhymes*, 107 Ariz. 12, 480 P.2d 662 (1971).

5. We find that case inapposite. The appellant in *Juvenile Action No. J–72472S.* picked up a hitchhiker and told her he would give her a ride

Next, appellant argues that pursuant to *State v. Bateman*, 113 Ariz. 107, 547 P.2d 6 (1976), an accomplice instruction should have been given by the trial court and failure to do so constitutes prejudicial error. In *Bateman*, decided on March 10, 1976, we said:

"A.R.S. § 13–136 provides that a conviction will not be had on the testimony of an accomplice unless that testimony is corroborated by other evidence connecting the defendant with the commission of the offense. An accomplice is one who could be indicted or informed against for the same crime of which the defendant is accused. *State v. Thomas*, 79 Ariz. 355, 290 P.2d 470 (1955). Both persons who consensually participate in criminal sexual activity are accomplices and can be charged as principals. *State v. McDaniel*, 80 Ariz. 381, 298 P.2d 798 (1956). The failure of the trial courts to instruct the juries on this issue was reversible error even in the absence of requests for such instructions. *State v. Betts*, 71 Ariz. 362, 227 P.2d 749 (1951). These were not cases where the evidence was so undisputed that the complaining witnesses were not accomplices that the errors can be ignored. If the complaining witness should be found by the jury to have in fact consented to the acts alleged, the witness' testimony must otherwise be corroborated to convict the defendant." 113 Ariz. at 111, 547 P.2d at 10.

On June 24, 1976, A.R.S. § 13–136 was repealed. See Ch. 116, § 1, Laws of 1976. Since both the offenses and appellant's trial occurred after A.R.S. § 13–136 was repealed, *Bateman* is inapplicable.

█ Finally, appellant urges that the victim's testimony in this case was inherent-

home. Instead, he took her to South Mountain Park and raped her. Appellant argued that he could not be convicted of kidnapping since the victim entered his vehicle voluntarily. The Court of Appeals disagreed, holding that consent procured by fraud is not legal consent, and that a "taking" commenced when appellant refused to take the victim home and instead took her to another place against her will. There was no mention in *Juvenile Action No. J–72472S.* of required jury instructions.

ly incredulous, and asks this Court to "sincerely evaluate the testimony and set the conviction aside."

We have held:

"Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction. *State v. Riggins*, 111 Ariz. 281, 528 P.2d 625 (1974). The credibility of witnesses is an issue to be resolved by the jury; as long as there is substantial supporting evidence, we will not disturb their determination. *State v. Harrison*, 111 Ariz. 508, 533 P.2d 1143 (1975)." *State v. Scott*, 113 Ariz. 423, 424–425, 555 P.2d 1117 (1976).

There was substantial evidence to warrant a conviction in this case. The victim's testimony was uncontroverted and the jury believed her. The evidence was sufficient to sustain appellant's convictions.

Judgments affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.