OPINION
CORCORAN, Judge.
Defendant, Anthony Louis Collins, after waiver of a jury trial and submission of the case to the trial court on the record (transcript of motion to suppress hearing and police reports), was convicted of unlawful possession of a narcotic drug for sale valued over $250.00. Defendant was sentenced to a term of six years’ imprisonment, less than the seven-year presumptive sentence. The issue raised on appeal is whether the trial court erred by denying appellant’s motion to suppress.
At the motion to suppress hearing, the following evidence was elicited. Working undercover, Detective Vincent Salvato, of the Mesa Police Department, had arranged with Donald Lightner to purchase cocaine from Robert Cipinko on July 31, 1980. Salvato had previously bought cocaine from Cipinko through Lightner. The police had organized a “buy-bust” anticipating that *435 only the suspects, Cipinko and Lightner, would be arrested. At the time of the police briefing for the buy-bust, none of the police knew that defendant existed.
Salvato and the suspects entered apartment 23, at 6925 East 4th Street in Scottsdale, Arizona. Salvato’s “body bug” was barely working, with only bits and pieces of the conversation being transmitted. Because of the failure of his transmitter and in order to protect Salvato, several officers positioned outside the apartment in various places moved closer to the apartment.
Inside apartment 23, Salvato became upset because Cipinko did not have all of the cocaine which he had earlier agreed to sell. Cipinko told Salvato his source was “in the immediate area” and he left the apartment to get the rest of the cocaine Salvato requested. After Cipinko went out the door, Lightner said to Salvato, “Don’t worry. Our supply is right next door.” “Next door” was apartment 24, defendant’s apartment. Once outside Cipinko stumbled into Detective John R. Doyle, who was accompanied by Officer Gary Puls. Doyle, standing with his back to the apartment door, watched while Puls arrested Cipinko.
Doyle then heard a door behind him close. He believed it to be the door to apartment 23. In fact, defendant had exited apartment 24. Officer Doyle turned, heard defendant exclaim, “Oh shit!” and saw the defendant run along the walkway in front of the apartments. Doyle radioed to Officers Joe Mendoza and Felipe Quintana that a suspect was coming their way. The latter officers met defendant with raised guns. Defendant complied with their request to stop and positioned himself flat on the ground, face down.
Mendoza searched defendant, finding and seizing a baggy containing a flour-like substance in one pants pocket, and a roll of money in the other pants pocket. Defendant was advised of his Miranda rights, handcuffed, and taken to apartment 23.
About this time, the police sought entry to apartment 24, which was locked. A man and woman were inside. The man admitted the police and they walked through the apartment. Later, the police got a warrant and searched the apartment, finding marijuana and cocaine.
After his indictment, defendant moved to suppress all evidence implicating him which had been seized by the police. Defendant argued there was no reasonable suspicion for an investigative stop and no probable cause to arrest, and, therefore, that all subsequent seizures by the police were inadmissible as “fruit of the poisonous tree.” Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). After an evidentiary hearing, the trial court denied defendant’s motion to suppress with regard to the stop and search outside the apartment and denied the motion to suppress with regard to items seized inside apartment 24 pursuant to the valid search warrant. However, the trial court granted defendant’s motion to suppress any items seized or used to establish probable cause during the police officers’ walk-through of apartment 24 following the defendant’s apprehension.
Defendant’s opening brief argues that there was no probable cause sufficient to justify an arrest of defendant, and therefore the seizure of the cocaine and money was not proper as the result of a search incident to a lawful arrest. First, defendant’s flight and proximity to the “buy-bust” were not sufficient probable cause for arrest. Second, Lightner’s comments to Officer Salvato inside the apartment, about the source of the cocaine, could not properly be used in determining the probable cause to arrest that was available to the officers outside under the “collective knowledge” doctrine.
The state does not attempt to justify the search of defendant as one incidental to a lawful arrest. The state argues, however, that the arrest occurred after the seizure of the cocaine and money. The state argues the seizure was proper pursuant to a “stop-and-frisk” because officers, while feeling for weapons, may seize any other suspicious items. The state appears to claim a “plain feel” exception to the *436 Fourth Amendment. Defendant replies that a weapons frisk may only be for weapons, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and therefore the search and seizure exceeded constitutional limits. We agree.
An investigative stop is reasonable where the officer shows that he was not arbitrary or harassing. E.g., State v. Jarzab, 123 Ariz. 308, 599 P.2d 761 (1979). We need not, however, decide this question in order to dispose of this appeal. Assuming arguendo that the stop and frisk for weapons which found none was reasonable, the dispositive question remains: Was the search which produced the cocaine and money reasonable? See State v. Woods, 121 Ariz. 187, 589 P.2d 430 (1979). We conclude that the answer must be in the negative.
At the time of the search, defendant wore a “T-Shirt,” a pair of gauze pants and was barefoot. He had nothing in his hands. The only unusual circumstances were that (1) he was running “pretty good,” and (2) Mendoza considered the situation “dangerous.” There was nothing menacing about defendant’s demeanor. He made no furtive gestures.
Under Terry, a weapons frisk is permissible if the officer reasonably believes that the person he detains is armed and presently dangerous. Accord, State v. Aquirre, 130 Ariz. 54, 633 P.2d 1047 (App.1981). Arguably the cited facts do not provide sufficient reason to suppose that defendant was either armed or presently dangerous. However, we will assume to the contrary that Officer Mendoza reasonably suspected defendant was armed and presently dangerous, and that, therefore, a “pat-down” search for weapons was justified.
Our primary concern is with the proper scope of the search. On direct examination by Jeffrey Miller, deputy county attorney, Officer Mendoza conceded that he found no weapons during the pat-down search and described what the pat-down revealed:
Q. During this pat-down for weapons did you discover any weapons?
A. No.
Q. During your pat-down of Collins, did you discover anything unusual?
A. Yes.
Q. What was that?
A. He had something in each of his front pockets.
Q. During your pat-down did you squeeze it?
A. Yes.
Q. What kind of consistency did it have?
A. Flour-like something.
Q. Plastic in each of the pockets?
A. No. One was like paper rolled up, just, well, turned out to be money. It was just like paper.
Q. And the other turned out to be—
A. Cocaine.
Q. I take it you then reached into his pockets and removed both of these things?
A. Yes____ I believe at the time I did the frisk he was laying down.
On cross-examination, defense counsel Allen B. Bickart pursued the issue:
Q. All right, now, Detective Mendoza ... you wrote in this particular supplement, and I quote, “I frisked Collins and found bulky items in each of these front pockets. The item in his right front pocket felt like it was wrapped in plastic (the pants Collins was wearing were a large weave, thin material, that enabled me to determine this).”
Now he was laying down, is it not so, when you were doing this search?
A. Yes.
Q. Was he giving you any resistance?
A. I don’t remember, I don’t think so.
Q. When you felt the plastic substance or plastic bag in his pocket, did it feel like a gun?
A. No.
Q. Did it feel like a knife?
A. No.
*437 Q. Did it feel like any known weapon that you were acquainted with?
A. No.
Q. Did you reach in and retrieve it? A. Yes, I did.
Q. So when you felt the paper on the other side of his pocket, did it feel like a weapon?
A. No.
Q. Did you reach in and retrieve it? A. Yes, I did.
Q. Did you then continue to pat him down, his legs and various parts of his body after you had retrieved those two items from his pockets?
A. I believe so.
It is patent from his testimony that Officer Mendoza did not limit the scope of his search to weapons. He felt “soft” objects which were obviously not weapons, squeezed them, invaded defendant’s pockets and seized them. This procedure clearly violates the Fourth Amendment.
In Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the officer told Sibron to come out of the restaurant with him. Once outside, the officer said “You know what I am after.” Sibron then reached into his pocket, whereupon the officer thrust his hand into the same pocket and found glassine envelopes later determined to contain heroin. The Court first found a lack of probable cause for arrest, so that the search could not be justified as a search incidental to a lawful arrest. The Court then considered whether the search was justified because the officer had reason to believe that Sibron was armed and dangerous. The court found no evidence that the officer had reason to believe that the suspect was armed and dangerous or that Sibron was reaching into his pocket for a weapon. The Court also explained that a Terry search is reasonable and thus permissible only if its scope did not exceed that reasonably believed necessary to protect the officer:
Even assuming arguendo that there were adequate grounds to search Sibron for weapons, the nature and scope of the search ... were so clearly unrelated to that justification as to render the heroin inadmissible. The search for weapons approved in Terry consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in Terry place his hands in the pockets of the men he searched____ The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception — the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment____
392 U.S. at 65-66, 88 S.Ct. at 1904.
In State v. Hobart, 94 Wash.2d 437, 617 P.2d 429 (1980), the Washington Supreme Court applied Sibron to a factual pattern very close to this case. The court, although skeptical, assumed that the officer had reasonable grounds to think the defendant armed and dangerous. The officer in Hobart testified that, for his own safety, he had patted the defendant for weapons, and felt two spongy objects in defendant’s shirt pocket. The court stated:
However, from his [the officer’s] own description of the search which he made, it is evident that its scope was not strictly limited to a search for weapons, but included also an exploration of the possibility that the defendant might be in possession of narcotics. Having discovered “spongy” objects (which could not reasonably be feared as dangerous weapons) in the defendant’s pockets, the officer squeezed them, with the obvious purpose of ascertaining whether they had the shape and consistency of balloons commonly used for narcotics. Such a search reaches beyond the scope permitted under the Fourth Amendment, adding to the search for weapons a search for evidence of a crime.
We are aware of no instance in which the Supreme Court has condoned the use of a “frisk” to search for evidence of an independent crime. All of its pronouncements have made it clear that such a *438 warrantless personal intrusion is justified only to assure the safety of the officer and others. To approve the use of evidence of some offense unrelated to weapons would be to invite the use of weapons’ searches as a pretext for unwarranted searches, and thus to severely erode the protection of the Fourth Amendment. Such a step this court is not prepared to take.
94 Wash.2d at 446-47, 617 P.2d at 433-34.
Overwhelmingly, case law holds that the seizure of any object revealed by a pat-down search in cases similar to this is wholly impermissible. See e.g., United States v. Del Toro, 464 F.2d 520 (2d Cir.1972); People v. Collins, 1 Cal.3d 658, 83 Cal.Rptr. 179, 463 P.2d 403 (1970); Raleigh v. State, 404 So.2d 1163 (Fla.App.1981); People v. McCarty, 11 Ill.App.3d 421, 296 N.E.2d 862 (1973); Francis v. State, 584 P.2d 1359 (Okl.Cr.1978). As defendant argued at the suppression hearing, “There was no frisk. There was just a flat-out search.” We find that the seizure of the cocaine and money from defendant’s pockets violated his Fourth Amendment rights. Therefore, the trial court erred in denying defendant’s motion to suppress as to these items.
Finally, the trial court denied the motion to suppress the evidence from the stop and search outside the apartment, but granted the motion as to any items seized or used to establish probable cause during the policemen’s walk through Collin’s apartment following his arrest. The court also denied the motion to suppress evidence of items seized pursuant to the search warrant for apartment 24. The parties have not argued, nor is it clear from the record, what effect the invalidity of the stop and search of defendant might have on the trial court’s ruling that the apartment search conducted pursuant to the warrant was proper. Therefore, we instruct the trial court to consider this matter on remand.
For the foregoing reasons, defendant’s conviction and sentence are reversed and remanded for new trial.
CONTRERAS, P.J., and OGG, J., concur.