708 P.2d 732

**STATE of Arizona, Appellee,**

v.

**Paul Ernest SPARKS, Appellant.**

**No. 6403.**

Supreme Court of Arizona,
In Banc.

Oct. 17, 1985.

Robert K. Corbin, Atty. Gen., by William J. Schafer III and Greg McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

David Chamberlain, Prescott, Atty. for appellant.

CAMERON, Justice.

Defendant, Paul Ernest Sparks, was convicted by a jury of first degree murder, A.R.S. § 13–1105; and negligent homicide, A.R.S. § 13–1102. He was sentenced for the murder to a term of life imprisonment without possibility of parole for twenty-five years, A.R.S. § 13–703; and to a term of eight years for the negligent homicide to be served consecutively to the life sentence, A.R.S. §§ 13–1102, –604, –708. We have jurisdiction pursuant to art. 6, § 5(3) of the Arizona Constitution and A.R.S. §§ 13–4031, –4035.

Three issues are presented for review:

1. Did the trial court improperly refuse to strike a juror for cause?

2. Did the trial court improperly strike a juror who expressed reservations about the death penalty?

3. Did the trial court err in permitting improper character evidence to be admitted against defendant?

The facts follow. On 11 April 1984, defendant, an employee of his father's Prescott, Arizona insurance agency, had an argument with his father at work. It culminated in defendant's father, one of the victims, striking defendant. Testimony conflicted as to the cause of the argument. Defendant maintained that they argued over his recent purchase of a diamond ring. The victim's business associates, however, inferred that defendant and the victim argued about defendant's embezzlement from the agency to support his extravagant lifestyle, a fact of which, they asserted, the father was aware. Testimony was also adduced that defendant had a poor relationship with his parents, stemming from his unwillingness to conform to their strict religious lifestyle.

On the evening of 11 April 1984, defendant went to a local bar and consumed a great amount of alcohol as was his custom. Witnesses testified, however, that defendant had a high tolerance to alcohol, that they had never observed him drunk, and that he did not appear to be drunk on the night in question. At approximately 1:30 a.m., on April 12th, defendant purchased a pair of mittens at a convenience market.

Later that morning, at approximately 4:30 a.m., defendant silently entered the home of his sleeping parents. He went directly to a bedroom closet where a .22 caliber revolver was kept. Wearing mittens, defendant delivered a fatal shot to his father's head, and when his sister startled him, he mortally wounded her in the chest. Defendant's mother was also wounded in the wrist amidst the confusion of flying bullets. Defendant fled and was later apprehended in San Diego, where he waived his *Miranda* rights and gave a full statement.

## REFUSAL TO STRIKE A VENIREMEMBER

Defendant argues that the court erred in refusing to strike a potential juror for cause.

Mary Kathleen Stump testified on voir dire that she had read about defendant's case in a newspaper and had discussed it

with friends. She answered the court's questions as follows:

THE COURT: All right. Have you formed or did you form—

MS. STUMP: Well, at that time, you know, I formed some drastic opinions.

I'm really soul searching, you know.

I think I can set all of that aside and listen to what's happening now, and not what I read.

THE COURT: But you have, or did form an opinion at one time, is that right?

MS. STUMP: Yeah, in the spring I definitely did.

THE COURT: You think you can set that aside now and be fair and impartial?

MS. STUMP: Yes, I think I can, because there is going to be alot of things come out now that weren't in the paper, you know.

THE COURT: Judge the case based solely on the evidence produced in Court?

MS. STUMP: I think I can.

THE COURT: Disregard what you have discussed or hear, read—disregard the fact that you at one time formed an opinion?

MS. STUMP: Yeah, I think I can.

THE COURT: Be fair and impartial?

MS. STUMP: Yeah.

Later, when questioned by defendant's attorney, the following dialogue took place:

MR. HINSON: You've told us that—in open court you told us that you formed some drastic opinions about this case when you first heard about it.

Can you—

MS. STUMP: Well, yeah. I had real drastic opinions, you know, because, like, there is no reason—you know—it's kind of drastic action.

MR. HINSON: You use the term, "you know", and the trouble with this proceeding is that we don't, though.

MS. STUMP: I am sorry.

MR. HINSON: What drastic opinions did you form?

MS. STUMP: Well, I think it's pretty bad when you kill your family members.

And I felt that he had killed his father and sister, and also wounded his mother.

My feelings—the family unit is what there is.

MR. HINSON: You used the past tense of the term that you felt that he had done this.

MS. STUMP: Well, I am trying—with some of the other things that has been brought out in questioning—or, you know, in the questioning of the jury, that even if he still—if he did it, there might have been circumstances that it's just not quite as black and white as I felt in the beginning.

But I still—it's hard.

I'm really going through a wringer, because I still think, basically, you don't kill your family members.

MR. HINSON: And, at this point in the proceedings, you feel that that's what Paul Sparks did, don't you?

MS. STUMP: That, you know—and I'm trying to be—you know, trying to decide for myself whether I can put all of that out of my mind.

MR. HINSON: What do you think? Do you think you can?

MS. STUMP: I think—I think I can listen to the evidence, and if—even if I still feel that he did, I think I can listen and understand the reason, if he did that, and judge on what—not on what—you know, what I have decided last spring, because I think I can make a decision on what I would hear.

MR. HINSON: You have told us that you feel you can be a fair and impartial juror?

MS. STUMP: I really think I can.

MR. HINSON: Do you think that you would be more fair and impartial if you hadn't had this prior knowledge?

MS. STUMP: Probably.

Recently, the United States Supreme Court reiterated the standard against which a trial judge must evaluate whether to strike a prospective juror for cause. The court stated, "[t]hat standard is whether the juror's views would 'prevent or sub-

stantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. ——, ——, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851–52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589 (1980)). *See also, State v. Martinez-Villareal*, 145 Ariz. 441, 449, 702 P.2d 670, 678, and cases cited therein. Although both *Wainwright* and *Adams* dealt with jurors challenged for cause based on their views about capital punishment, the *Wainwright* court indicated that its formulation has broad applicability:

> [T]here is nothing talismanic about juror exclusion * * * merely because it involves capital sentencing juries. * * * Here, as elsewhere, the quest is for jurors who will conscientiously apply the law and find the facts.

> \* \* \* \* \* \*

As with any other trial situation where an adversary wishes to exclude a juror because of bias, then, it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality. * * * This is, of course, the standard and procedure outlined in *Adams*, but it is equally true of any situation where a party seeks to exclude a biased juror.

> \* \* \* \* \* \*

> [E]xcluding prospective capital sentencing jurors because of their opposition to capital punishment is no different from excluding jurors for innumerable other reasons which result in bias, * * *.

*Wainwright, supra,* 469 U.S. at ——— ——, 105 S.Ct. at 852–855, 83 L.Ed.2d at 851–55 (citations omitted).

■ Turning to the facts of this case, undeniably Stump's replies as to her ability to sit as a juror exposed a degree of ambivalence. Our inquiry, however, does not end there. As the court noted in *Wainwright*, facial expressions, coupled with vocal inflections, can convey to a trial judge a degree of credibility we cannot gauge from a lifeless transcript:

> [S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province. Such determinations were entitled to deference even on direct review; * * *. [The trial judge's] predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record.

*Wainwright, supra* at ——— ——, 105 S.Ct. at 854–855, 83 L.Ed.2d at 854–55. We will not, therefore, set aside a ruling on a challenge to a veniremember absent a clear showing that the trial court abused its discretion. *State v. Montano*, 136 Ariz. 605, 607, 667 P.2d 1320, 1322 (1983).

■ In the instant case, we are unable to say that he abused his discretion in failing to strike veniremember Stump. That Stump had preconceived notions did not necessarily render her incompetent to sit fairly and impartially as a juror. *State v. Clabourne*, 142 Ariz. 335, 344, 690 P.2d 54, 63 (1984). Rather, she could serve if willing to put aside her opinions and base her decision solely upon the evidence. *Id.* The voir dire was properly used to rehabilitate her by persuading her of her responsibility to sit impartially. *Id.*

## STRIKING A JUROR FOR HER VIEWS ABOUT CAPITAL PUNISHMENT

■ Defendant maintains that he was also denied a fair trial because the trial court prohibited a veniremember from sitting as a juror after she expressed reservations about the death penalty.

Merla Kathleen Earnshaw was excused for cause based upon the following exchange with the court during voir dire:

> Is there anyone on the panel who, because of the nature of the offenses that have been charged, the type or kind of case that will be tried, or the instructions that I may give concerning the law as they apply in this case, or for any reason whatsoever, up to this point in the case, feel that you could not be a fair and impartial juror?

> If you feel that you could not, please raise your hand.

Miss Earnshaw, you think you would have a problem?

MS. EARNSHAW: Well, teenager would be weighing on my mind. I am sorry. I would be sidetracked with my mind on that.

THE COURT: You believe that your beliefs with respect to capital punishment might cause you a problem?

MS. EARNSHAW: Yes.

We first note that a fair reading of her statements reveal that Earnshaw was not necessarily struck due to her feelings about the death penalty. Rather, the dialogue indicates that she might have been excused because she expressed uneasiness over the defendant's youth. Assuming arguendo, however, that Earnshaw's disqualification was based solely upon her opposition to capital punishment, we, nevertheless, believe that it was proper.

In *Witherspoon v. Illinois*, 391 U.S. 510, 522 n. 21, 88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776, 785 n. 21 (1968), the United States Supreme Court indicated in a footnote that jurors may be excused for cause if it is:

> * * * unmistakably clear (1) that they would **automatically** vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's **guilt**.

In two more pronouncements, the Court retreated from what it felt had become an unworkable *Witherspoon* standard. In its stead, the court stated that a juror could be excluded if his views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright, supra; Adams, supra.*

Recently, we had opportunity to apply the *Wainwright/Adams* standard. In *State v. Martinez-Villareal, supra,* we held that a trial judge properly excluded three jurors who stated that their reservations about the death penalty would render them unable to determine impartially the defendant's guilt or innocence.

In the instant case, Earnshaw stated that her feelings about capital punishment would have caused her a problem. Admittedly, the *Wainwright/Adams* disqualification standard would have been more clearly satisfied had the trial court gone on to ask one or more questions to determine definitively if Earnshaw's feelings would have impaired her ability to perform her duties. Even without such further questioning, however, we believe that Earnshaw's statements, read as a whole, indicated her inability to sit as a juror without distraction. Her responses reveal that her opposition to capital punishment, coupled with her concerns about defendant's youth, would have "sidetracked" her. That the colloquy was not couched in the language of *Wainwright* and *Adams* is not fatal: "[r]elevant voir dire questions addressed to this issue need not be framed exclusively in the language of the controlling appellate opinion; the opinion is, after all, an opinion and not an intricate devise in a will." *Wainwright, supra* 469 U.S. at ——, 105 S.Ct. at 857, 83 L.Ed.2d at 857–58.

Granting deference to the decision of the trial judge, as we must, *Wainwright supra,* we do not believe that he abused his discretion in excusing veniremember Earnshaw. Rather, we believe that the *Wainwright/Adams* standard recently adopted by this court in Martinez-Villareal, *supra,* was met. We find no error.

## PRIOR BAD ACTS TESTIMONY

■ Defendant asserts that the trial court erred in allowing the admission of prejudicial character evidence. We do not agree.

The state's theory in this case was that defendant and his father had a long-standing feud over defendant's extravagant lifestyle, that they came to blows the day before the instant offenses, and that defendant committed these offenses to retaliate. The state further theorized that defendant intended to take over his father's

insurance agency and that his father was aware that defendant was embezzling funds from the business to support his lifestyle. In support of this hypothesis, the state presented the testimony of persons affiliated with the agency and of insurance investigators who testified that defendant did, in fact, embezzle funds from the agency.

Our rules of evidence provide:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b), Ariz.R.Evid., 17A A.R.S. In denying defendant's motion in limine to preclude the admission of the contested evidence, the trial court stated that:

I find for the record that the statement or statements that are being offered, they are evidence of material fact or facts. They are more probative on the point for which they are offered than other evidence that might be available, or they are more probative in addition to the other evidence that is available. The interest of justice will be served; the statements are strongly probative under the circumstances, and they are reliable.

We have stated that, "[b]ecause a trial court is best able to balance the probative value versus the prejudicial effect of 'other crimes, wrongs, or acts' evidence, it is invested with considerable discretion in deciding whether to admit such evidence." *State v. Via,* 146 Ariz. 108, 704 P.2d 238 (1985). We believe that the trial judge ruled correctly in the instant case. That defendant and the victim had an ongoing feud was clearly relevant under the facts of this case. *See State v. Jeffers,* 135 Ariz. 404, 418, 661 P.2d 1105, 1119, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983) ("Evidence of prior trouble between the victim and the accused derives its relevance from the fact that the existence of

prior ill will toward the victim not only renders the commission of the crime more probable, but tends to show the malice, motive or premeditation of the accused.") Testimony that the feud may have involved defendant's embezzlement was, in turn, admissible as evidence completing the story of the crime. *State v. Reinhold,* 123 Ariz. 50, 55, 597 P.2d 532, 537 (1979). Where, as here, defendants planned to take over businesses from their victims, testimony of such plans was admissible as evidence of the defendants' motive. *State v. McCall,* 139 Ariz. 147, 152–53, 677 P.2d 920, 925–26 (1983); *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984); *State v. Cruz,* 137 Ariz. 541, 546–47, 672 P.2d 470, 475–76 (1983). We see little to distinguish these cases from the case now before us. We find no error.

We have reviewed the entire record pursuant to A.R.S. § 13–4035 for reversible error and have found none. The judgments and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, specially concurring.

I do not agree with the portion of the opinion dealing with the state's challenge to Ms. Earnshaw.

The trial judge denied defendant's challenge for cause to Ms. Stump, even though she admitted to having formed some "drastic opinions." At 734. The majority concludes that there was no error because, after extensive questioning, Ms. Stump stated that she could find the facts objectively, apply the law and be a "fair and impartial juror." At 735. The majority correctly states that the "standard is whether the juror's views would 'prevent or substantially impair the performance of [her] duties.'" At 735, citing *Wainwright v. Witt,* 469 U.S. ——, ——, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985).

The majority neglects to tell us why the same legal principles should not apply to Ms. Earnshaw, successfully challenged by

the state because she feared that it would "be weighing on my mind" that the defendant was a teenager charged with having murdered his father and sister and attempting to kill his mother. As the court indicates, " 'it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality.' " At 735, again quoting *Wainwright v. Witt, supra.* That burden was not carried here. The only follow-up question revealed that Ms. Earnshaw's "beliefs with respect to capital punishment might cause [her] a problem." At 736. We do not know what type of belief the juror held nor what type of problem she had. Neither the state nor the court demonstrated "that the potential juror [lacked] impartiality."

The majority speculates (At 736–737) that Ms. Earnshaw's "statements, read as a whole, indicated her inability to sit as a juror without distraction." The juror did not indicate any such inability. In any event, sitting "without distraction" is not the test. The majority twice tells us that the *Wainwright* test requires the trial judge to determine whether the juror's views would "prevent or substantially impair the performance of his duties...." At 735 and 736. There is no evidence that this standard was met with respect to juror Earnshaw, and no amount of speculation over what the juror may have meant can change that fact. The juror was worried about matters that would naturally evoke concern from any civilized juror. The court did not ask any question to elicit information upon which to ground a conclusion that the witness could not be fair and impartial. Thus, the majority holds that the defense challenge was properly denied even though the juror had "drastic opinions" because the juror could be "fair and impartial." The state's challenge, however, was properly granted although there was no evidence of opinion or partiality.

I cannot agree that trial judges may apply legal principles differently when ruling upon challenges for cause made by the defendant and by the state. This is a case in which evidence of guilt is clear and the

problem deals only with a challenge to a single juror. It is quite understandable that the court might be reluctant to face the issue of whether the error was prejudicial. In my view, however, it is better to struggle with that issue and even to call it harmless error, than to send a message that rules of law will be unevenly applied.