646 P.2d 268

**STATE of Arizona, Appellee,**

v.

**Timothy Brian AXLEY, Appellant.**

**No. 5024.**

Supreme Court of Arizona, En Banc.

May 10, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Jack Roberts and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Charles K. Ledsky, Phoenix, for appellant.

HAYS, Justice.

A jury found appellant, Timothy Brian Axley, guilty of first degree murder, attempted armed robbery with a deadly weapon and conspiracy to commit armed robbery. He was sentenced to life imprisonment without possibility of parole for 25 years on the murder charge and to concurrent terms of 7½ and 7 years on the remaining charges.

An appeal was filed pursuant to A.R.S. § 13–4031. In the interim, appellant filed a Motion for Post-Conviction Relief in accordance with 17 A.R.S. Rules of Criminal Procedure, rule 32.1(e), alleging newly discovered evidence. The petition was denied and Axley appealed. We consolidated the petition for review of the post-conviction relief order with the appeal from the convictions and sentences. Jurisdiction of this case is premised upon A.R.S. §§ 13–4031 and 13–4035.

On the evening of July 13, 1979, appellant Axley was driving a yellow Vega with a black racing stripe and the codefendant,[1] Michael Eugene Sodders, occupied the passenger seat. Sodders directed Axley to a location at 27th Avenue and Camelback Road in Phoenix. While Axley remained in the car, Sodders stepped out of view behind a fence. Sodders then entered the Suntown Laundry, asked for money, and shot the attendant, Teddie Tomlin. She died a short time later.

After the shooting, Sodders ran around the fence and entered the passenger side of the car which immediately departed. A witness, David Tanzy, called police and identified the vehicle. Police Officer Jef-

---

1. The trials of Axley and Sodders were severed, and Sodders entered a plea bargain agreement.

frey Fenton heard an emergency police radio transmission which described the shooting and indicated that the suspects were two males driving in a yellow Vega with a black stripe running from the trunk over the top. Fenton spotted a vehicle fitting the description and after following the car while it made several abrupt lane changes, he stopped behind the vehicle in the parking lot of a restaurant. Several other police cars arrived shortly thereafter. Police searched the Vega and arrested both occupants.

Additional facts pertinent to the questions raised by appellant will be discussed as necessary.

Appellant asserts six arguments on appeal:

1) Introduction of a police officer's testimony regarding what appellant told him after the officer destroyed his handwritten interview notes prejudiced appellant and entitles him to a new trial.

2) Failure of the trial court to grant immunity to a defense witness denied appellant his right to compulsory process of witnesses and his right to a fair trial.

3) The stop-and-search of appellant's vehicle violated the fourth amendment and any evidence obtained should have been suppressed.

4) Appellant was denied his constitutional right to a unanimous jury verdict by the use of a duplicitous indictment.

5) The trial court committed reversible error by not instructing the jury as requested by appellant.

6) The trial court erred in failing to grant a judgment of acquittal.

Following our discussion of the six issues raised by appellant, we will address the trial court's denial of appellant's Motion for Post-Conviction Relief.

**2.** Officer Campbell was also present at Axley's interview, but he made no notes.

## DESTRUCTION OF HANDWRITTEN NOTES

Following his arrest, appellant was taken to police headquarters where he agreed to an interview. No tape recording was made of the interview although the interviewer, Officer Marks, did take notes. These handwritten notes were transcribed, and after Marks checked the transcription for accuracy, the notes were destroyed.

At the trial it was established that Officer Marks did not have complete recollection of the appellant's statements made during the interview. The police officer relied on the transcribed notes in responding to the questions of counsel. Appellant maintains he is entitled to a new trial because the prosecution introduced the officer's testimony but failed to produce his handwritten interview notes.[2]

Appellant argues that handwritten notes taken by police investigators during an interview with a defendant must be preserved and provided to the defense. Rule 15.1(a)(2), Rules of Criminal Procedure, provides:

"a. Matters Relating to Guilt, Innocence or Punishment. No later than 10 days after the arraignment in Superior Court, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within his possession or control:

. . . .

(2) All statements of the defendant and of any person who will be tried with him;"

The comment to this rule indicates that the term "statement" is to be interpreted in accordance with Rule 15.4(a) and the use of the term under *Miranda* case law. Rule 15.4(a)(2) states:

"*Superceded Notes.* Handwritten notes which have been substantially incorporated into a statement shall no longer themselves be considered a statement."

Officer Mark's handwritten summary of Axley's oral communications comprised a statement as defined in Rule 15.4(a)(1)(iii).[3]

**3.** Rule 15.4(a)(1)(iii) provides that "the term 'statement' shall mean:

However, Marks testified that "the typed report accurately depicted what was on the notes." Since the handwritten notes were substantially incorporated into a typewritten statement, the notes themselves could no longer be considered a statement. Hence, they did not need to be made available to the defendant under Rule 15.1.

Appellant maintains, nevertheless, that he was denied his right to discovery under Rule 15.1(a)(1) and (2). He argues that "[t]he judiciary should not depend on the mere conclusions of a police officer who is in the competitive enterprise of ferreting out crime when protecting an individual's constitutional rights." In *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), the Ninth Circuit Court of Appeals reviewed the F.B.I. practice of destroying interview notes once they had been incorporated into a formal report. It held that "[s]ince the routine disposal of potentially producible materials by the FBI amounts to a usurpation of the judicial function of determining what evidence must be produced in a criminal case, ... such original or rough interview notes must be preserved." *Id.* at 1248. The requirement to preserve rough notes or tape recordings was reiterated in *United States v. Well*, 572 F.2d 1383 (9th Cir. 1978), and in *United States v. Parker*, 549 F.2d 1217 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). However, all of these cases relied on an interpretation of a federal statute, the Jencks Act, and, as such, are not applicable to state criminal trials. *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969). In *State v. Johnson*, 122 Ariz. 260, 594 P.2d 514 (1979), we declined to follow the Ninth Circuit and found that destruction of rough interview notes taken by a detective did *not* result in reversible error.

With respect to the instant case, we find appropriate the language of a recent court of appeals decision:

A writing containing a verbatim record or a summary of a person's oral communica-

"The interrogating officer testified that he had taken notes during the interrogation which he used to refresh his memory while preparing a departmental report. After the departmental report was prepared, he reviewed it for accuracy and found it correctly reflected the substance of the interviews with appellant. He then destroyed the notes, which he stated were substantially embodied in his report."

*State v. Brooks*, 127 Ariz. 130, 135, 618 P.2d 624, 629 (App.1980). The court of appeals concluded, as do we in the present case, that "the trial court did not err in denying appellant's motion to suppress his confession and in allowing the officer to testify at trial." *Id.* at 136, 618 P.2d at 630. Appellant is not entitled to a new trial.

In concluding that rough notes need not be preserved if substantially incorporated into a written report, we are mindful of the heavy responsibility placed upon the police officer to transcribe accurately the essence of a defendant's statements. In the instant case, the officer was interviewing an accused following the commission of a serious crime. The record indicates that tape recorders were readily available at the interview site. Under these circumstances, we indicate that use of a recording device would enhance the verity of the statement.

## REFUSAL TO GRANT IMMUNITY

Axley maintains that the refusal of the prosecutor to grant immunity to the codefendant, Sodders, resulted in the inability to secure the testimony of this essential defense witness. Appellant concludes that this refusal denied him his constitutional right to a fair trial and to the compulsory process of witnesses. Both parties stipulated that if Sodders were called to the witness stand he would state his name and would refuse to answer any other questions based on his fifth-amendment privilege against self-incrimination. Axley asked the court to grant the witness use immunity,

tions."

but his request was denied because, pursuant to A.R.S. § 13–4064,[4] the County Attorney did not request immunity for the witness.

■ In *State v. Buchanan*, 110 Ariz. 285, 518 P.2d 108 (1974), we were asked to determine whether the then existing immunity statute extended to requests by the defense for immunity from prosecution for witnesses called to testify on behalf of the defense. We concluded:

"[The respondent-defendant was] not prevented from exercising any right guaranteed by the Sixth and Fourteenth Amendments, but the witness called is entitled to the rights provided by the Fifth Amendment. Faced with a claim of the privilege against self-incrimination there is nothing in the Fourteenth Amendment which gives a criminal defendant the right to have immunity granted to the witness."

*Id.* at 289, 518 P.2d at 112. In fact, "[i]t is a matter of prosecutorial discretion to decide when the public interest would be best served by a grant of immunity." *State v. Verdugo*, 124 Ariz. 91, 94, 602 P.2d 472, 475 (1979); *State v. Cookus*, 115 Ariz. 99, 103, 563 P.2d 898, 902 (1977). Because his conviction could have been, and was eventually, appealed, Sodders still possessed the right to invoke the fifth amendment if called as a witness during appellant's trial. *State v. Gretzler*, 126 Ariz. 60, 88, 612 P.2d 1023, 1051 (1980). Under Arizona law, the state had no obligation to grant the witness immunity.

Appellant nevertheless cites two Third Circuit Court of Appeals decisions to support his contention that defense-witness immunity should have been granted. In *United States v. Morrison*, 535 F.2d 223 (3rd Cir. 1976), the court stated that due process may require the Government to request use immunity for a defense witness if prosecutorial misconduct caused the witness to withhold testimony out of fear of self-incrimination which otherwise would have been available to the defendant. The court in *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3rd Cir. 1980), noted a second circumstance in which a court has inherent authority to immunize a witness.

"[W]hen it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding use immunity, the court should grant judicial immunity to the witness in order to vindicate the defendant's constitutional right to a fair trial."

615 F.2d at 974.

■ Our review of the record fails to reveal any circumstance involving prosecutorial misconduct. Witness Sodders was unavailable because he had stated his intention to invoke the fifth amendment and neither party had him testify. "[T]here is no violation of the right to compulsory process when the unavailability of the witness has not resulted from the suggestion, procurement, or negligence of the government." *State v. Stewart*, 641 P.2d 895 (Ariz.App.1982); *Ferrari v. United States*, 244 F.2d 132, 141 (9th Cir.), *cert. denied sub nom. Darneille v. United States*, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957). Moreover, since Sodders had the right to appeal his conviction and did eventually do so, the government had a strong interest in withholding immunity. There is no indication that *at the time* Sodders would have testified had he been called, his testimony would have been clearly exculpatory and essential to defendant Axley's case. The bases for granting defense witness immunity set forth in *Morrison* and *Smith, supra*, are inapplicable to the instant case.

Finally, most of the federal circuit courts which have considered the matter have rejected defense witness immunity. *United States v. Lenz*, 616 F.2d 960 (6th Cir.), *cert.*

---

4. A.R.S. § 13–4064 provides in part: In any criminal proceeding before a court or grand jury, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby and if the prosecuting attorney, in writing, requests the court to order that person to answer the question or produce the evidence, the court may so order and that person shall comply with the order.

*denied,* 477 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *United States v. Alessio,* 528 F.2d 1079 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976); *see Thompson v. Garrison,* 516 F.2d 986 (4th Cir.), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. Allstate Mortgage Corp.,* 507 F.2d 492 (7th Cir. 1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975). We agree with the statement of the court in *United States v. Turkish,* 623 F.2d 769 (2nd Cir. 1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981):

> "While the prosecutor may not prevent or discourage a defense witness from testifying, *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *United States v. Morrison, supra,* it is difficult to see how the Sixth Amendment of its own force places upon either the prosecutor or the court any affirmative obligation to secure testimony from a defense witness by replacing the protection of the self-incrimination privilege with a grant of use immunity."

623 F.2d at 774.

## STOP AND SEARCH

Two witnesses to the events surrounding the shooting notified police. One witness, David Tanzy, described the man who ran from the laundromat and entered the car after the shooting although the description was neither complete nor without doubt. The car was reported to be a small yellow Vega with a black racing stripe and containing two males. This information was broadcast over the police emergency channel.

Approximately five to seven minutes after the broadcast and somewhat more than a mile from the scene of the shooting, Officer Fenton spotted a vehicle containing two males which matched the radio description. He pulled behind the vehicle and followed it while it made several abrupt lane changes. As the car was turning into a restaurant parking lot, Fenton turned on his red lights. The vehicle stopped and two men exited. Fenton approached the men to speak to them. Within minutes, two additional police vehicles arrived at the scene. The officers peered into the suspect vehicle and saw a knife handle protruding between the two front seats and nunchakus on the floor of the driver's side. The officers searched the vehicle and found a .22-caliber revolver under the passenger seat, whereupon they arrested the suspects.

Appellant contends that neither the stop nor the search of the automobile was justified on fourth- or fourteenth-amendment grounds. He argues that the defendants did not match the descriptions given by witnesses.[5] He notes that at the trial the officers who testified were unable to recall the *exact* contents of the radio broadcasts which they had heard one evening more than nine months prior to trial. Moreover, appellant argues that because the police department no longer had a record of the calls from the witnesses or of the actual radio broadcasts, there was no way to establish the contents of the broadcasts. Thus, there was no basis for finding probable cause to stop and search the vehicle. We do not agree.

First, the witness, who was riding his bicycle past the laundromat at the time of the incident, acknowledged that he did not get a clear view of the individual who did the shooting. He did, nonetheless, correctly describe the vehicle and indicate it held two male occupants. Thus, to argue that the suspects did not match the witness' description is, under the circumstances, not persuasive. Second, although some of the officers who testified regarding the contents of the radio broadcasts they had heard nine months earlier could not positively recollect the model of the car, they all remembered

---

**5.** At trial several witnesses to occurrences surrounding the shooting described either the man fleeing the laundromat or the passenger in the yellow Vega. The former was described as (1) wearing a light color shirt; (2) wearing a pinkish peach color knit shirt with a collar, but no tank top; (3) a Mexican-American with levis, white tennis shoes and a reddish color tank top. All witnesses indicated they did not have a clear view of the suspect and they could not say whether their recollections were accurate.

the broadcasts as describing a small yellow car, either a Maverick or a Vega, with a black racing stripe and two male occupants. Third, we recently rejected an argument that probable cause could not be established because recordings of the police radio broadcasts had been destroyed pursuant to routine police procedure. *State v. Nelson*, 129 Ariz. 582, 585–86, 633 P.2d 391, 394–95 (1981).

In *State v. Ochoa*, 112 Ariz. 582, 584, 544 P.2d 1097, 1099 (1976), we recognized a distinction between a stop made to discover a crime in the first instance and a stop made to investigate a crime already known to have been committed. The former is unauthorized under the fourth amendment to the Constitution of the United States[6] while the latter is permissible if it meets the test enunciated in *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968):

> "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

■ The United States Supreme Court in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), stressed that police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. It relied on a two-pronged totality of the circumstances test: 1) the assessment must be based upon all the circumstances; 2) the assessment must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. 449 U.S. at 418; 101 S.Ct. at 695. In the instant case, an attempted armed robbery was already known to have been committed. The circumstances indicate that only minutes after having heard the broadcast, Officer Fenton spotted a yellow Vega with a black racing stripe and two male occupants. The vehicle was in the vicinity of the recently committed felony and matched the broadcast description. Because both occupants of the car

were male and the driver abruptly changed lanes several times after the passenger appeared to have seen Fenton's patrol car, he suspected that the men might have been involved in the attempted armed robbery. We cannot say the stop was unreasonable under the circumstances.

■ Appellant next contends that the search was unjustified because it was performed without a warrant. A search without a valid warrant is *per se* unreasonable under the fourth amendment unless it comes within an exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). We find that such an exception applies to the instant case. The search of appellant Axley's car was reasonable due to the existence of probable cause plus exigent circumstances.

Under *Carroll v. United States*, 267 U.S. 132, 159–60, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925), a warrantless search conducted immediately after the vehicle is stopped is legal if probable cause exists "that the contents of the automobile offend against the law." In fact, "[t]he right to [a warrantless] search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Id.* Due to the coincidence of the suspect vehicle and its occupants with the police broadcast description regarding a recent attempted armed robbery plus the erratic driving pattern seemingly occasioned by the recognition of a law enforcement official, it was not unreasonable to presume the passengers might have been involved in the crime. A conclusion that the police officers would have probable cause to believe that the automobile contained the gun used in commission of the attempted robbery is not unreasonable. Thus, a warrantless search of the car was consistent with *Carroll*.

**6.** *See generally Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

Moreover, "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). In the instant case, police officers would not have been able to detain the vehicle until a warrant issued. The only alternatives were to follow the car until a warrant could be obtained or to search again for the car after the warrant was obtained. With either alternative, police ran the risk that the car would leave the jurisdiction or that evidence of the crime would be destroyed. Such a circumstance presents a "now or never" situation justifying a warrantless search. "Automobiles because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office." *Dyke v. Taylor Implement Manufacturing Co.*, 391 U.S. 216, 221, 88 S.Ct. 1472, 1475, 20 L.Ed.2d 538 (1968); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

■ The United States Supreme Court in *Chambers v. Maroney*, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), stated:

"[T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true ... if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search."

In the present case, a search of the vehicle subsequent to the stop was justified because the factual situation provided the police with reasonable or probable cause to believe they would find the instrumentality of a crime, and the mobility of the vehicle provided exigent circumstances.

## DUPLICITOUS INDICTMENT

A grand jury indicted appellant for first degree murder, attempted armed robbery, and conspiracy to commit armed robbery. Count I of the indictment stated in pertinent part:

"MICHAEL EUGENE SODDERS and TIMOTHY BRIAN AXLEY, did then and there, knowing that their conduct would cause death, with premeditation cause the death of TEDDIE TOMLIN; or acting together committed or attempted to commit an offense, to-wit: ARMED ROBBERY, and in the course of and in furtherance of such offense or immediate flight from such offense, MICHAEL EUGENE SODDERS or TIMOTHY BRIAN AXLEY caused the death of TEDDIE TOMLIN, while using or exhibiting a deadly weapon."

Although the trial judge granted the defendant a directed verdict on the issue of premeditation, he did not inform the jury. With respect to the first degree murder charge, the trial judge instructed the jury as follows:

"A person commits first-degree murder if:

First he or an accomplice commits or attempts to commit a robbery or an armed robbery; and

Two, in the course of and in furtherance of the offense, he or the accomplice causes the death of any person whether the killing is intentional, unintentional or accidental."

The jury found Timothy Axley guilty of first degree murder, attempted armed robbery, and conspiracy to commit armed robbery.

Appellant maintains his constitutional right to a unanimous jury verdict was violated because the indictment was duplicitous. He argues that since the jurors were read the indictment at the beginning of the trial, but never knew the defendant was granted a directed verdict on the issue of premeditation, they could have based their decision either on premeditated murder or felony murder.

An indictment is duplicitous if it charges two separate crimes in the same count. *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 351–52, 70 L.Ed.2d 183 (1981); *United States v. Ellis*, 595 F.2d 154, 163 (3rd Cir.), *cert. denied*, 444 U.S. 838, 100 S.Ct. 75, 62 L.Ed.2d 49 (1979). Each separate offense is to be charged in a separate count. *State v. O'Brien*, 123 Ariz. 578, 583, 601 P.2d 341, 346 (App.1979); 17 A.R.S. Rules of Criminal Procedure, rule 13.3(a). In the instant case, Count I of the indictment set forth two bases for the charge of first degree murder: (1) causing death with premeditation, and (2) felony murder.

A.R.S. § 13–1105 provides that the crime of first degree murder can be committed in either of two ways. First, an individual commits first degree murder if he causes the death of another with premeditation, intending or knowing that his conduct will cause death. Second, under the doctrine of felony-murder, a person commits first degree murder if "[a]cting either alone or with one or more other persons such person commits or attempts to commit . . . robbery . . . and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person." A.R.S. § 13–1105(A)(2). Although the first count of the indictment set forth the two bases delineated in A.R.S. § 13–1105 for classifying appellant's actions as first degree murder, it charged him with only *one* crime. Thus, the indictment was not duplicitous.

Even had we found a duplicitous indictment, the court's instruction to the jury would have remedied the problem. "[A] duplicitous . . . indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count of the indictment." *United States v. Robinson, supra*, at 1194. The jury instructions in the instant case clearly indicated that the legal element to be considered in arriving at a verdict on the first degree murder charge was the commission or attempted commission of robbery or armed robbery. Premeditation was not an element. We find no error.

## JURY INSTRUCTIONS

Appellant requested the trial court to give the jury thirty-five different instructions. The trial judge gave only one of the requested instructions verbatim. Appellant urges us to find reversible error because the trial court did not utilize all of his requested instructions.

It is not error to refuse to give specifically requested instructions when the jury instructions given by the trial court adequately set forth the law applicable to the case. *State v. McIntyre*, 106 Ariz. 439, 445, 477 P.2d 529, 535 (1970); *State v. Wallace*, 83 Ariz. 220, 319 P.2d 529, 530 (1957). We have reviewed the instructions the trial court gave to the jury and find that, although all the legal theories represented in defendant's requested instructions were not given to the jury, the jury instructions actually given fairly represented the applicable law.

Appellant, nevertheless, maintains that *all* his requested instructions should have been given. A defendant is entitled to a jury instruction on any theory *reasonably* supported by the evidence. *State v. Melendez*, 121 Ariz. 1, 5, 588 P.2d 294, 298 (1978); *State v. Miller*, 108 Ariz. 441, 445, 501 P.2d 383, 387 (1972). Several of defendant's instructions dealt with issues such as intoxication, mistake of fact, burglary, endangerment, facilitation, solicitation, aggravated assault, unlawful imprisonment, and the distinction between manslaughter and negligent homicide. The term "reasonable" would have to be redefined if we were to hold that these requested instructions were reasonably supported by the evidence.

Absent fundamental error, the defendant must specifically state the reasons for his objections to the proposed jury instructions to preserve the issue on appeal. *State v. Edgar*, 126 Ariz. 206, 209, 613 P.2d 1262, 1265 (1980); *State v. Toney*, 113 Ariz. 404, 408, 555 P.2d 650, 654 (1976); 17 A.R.S. Rules of Criminal Procedure, rule 21.3(c). The failure of the trial court to utilize the

defendant's requested instructions did not rise to the level of fundamental error in this case. With the exception of one instruction, defense counsel thus waived raising the jury instruction issue on appeal because he failed to state the distinct grounds for his objections at trial.

■■■ Defense counsel did specifically object to the trial judge's refusal to give the "Willits' instruction." This instruction was designed to be given to the jury when the state destroys evidence which could exonerate the defendant. *State v. Garrison*, 120 Ariz. 255, 585 P.2d 563 (1978). The Willits' instruction reads:

> "If you find that the plaintiff, the State of Arizona, has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are at issue, you may infer that the true fact is against their [sic] interest."

*State v. Willits*, 96 Ariz. 184, 187, 393 P.2d 274, 276 (1964). We previously found that under 17 A.R.S. Rules of Criminal Procedure, rule 15.4(a)(2), Officer Marks' handwritten summary of defendant Axley's statements was substantially incorporated into a typewritten statement, and he was, thus, not precluded from destroying it. To tell the jury it could infer from such actions that the contents were against the state's interest would be, at best, confusing and, more likely, a misstatement of the applicable law. "[I]nstructions must be predicated on some theory of the case which may be found in the evidence, and, when not so predicated, they should not be given, as their tendency would be to mislead the jury." *State v. McIntyre, supra; State v. Singleton*, 66 Ariz. 49, 56, 182 P.2d 920, 924 (1947). It is not error to refuse to give instructions which are not correct statements of law and do not fit the facts. *State v. Reinhold*, 123 Ariz. 50, 57–58 n. 4, 597 P.2d 532, 539–40 n. 4 (1979). -- --

## FAILURE TO ACQUIT

In his final argument appellant contends that the trial court should have directed a judgment of acquittal. He argues that the statements of the police officers were the only evidence presented to the jury regarding whether appellant knew Sodders was to rob a laundromat. Because these statements were "suspect" according to appellant, the trial court had no substantial evidence to warrant the conviction.

■■ 17 A.R.S. Arizona Rules of Criminal Procedure, rule 20(a), requires the trial court to enter a judgment of acquittal when "there is no substantial evidence to warrant a conviction." The instant case involved a question of fact for the jury. It chose to believe the police officer's version of the facts rather than appellant's version. If substantial evidence exists that a defendant has committed the crime charged, the trial court has no duty to enter a judgment of acquittal. *State v. Mosley*, 119 Ariz. 393, 402, 581 P.2d 238, 247 (1978). Our review of the record indicates sufficient evidence to support the jury's finding. If reasonable persons can accept the evidence presented as sufficient and adequate to support a conclusion that the defendant is guilty beyond a reasonable doubt, the evidence is "substantial." *State v. Nelson*, 129 Ariz. 582, 587, 633 P.2d 391, 396 (1981); *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). The evidence as previously set forth supports this position. The trial court did not err in failing to enter a judgment of acquittal.

## POST–CONVICTION RELIEF

Approximately six months after his conviction and sentencing, appellant filed a petition for post-conviction relief alleging newly discovered evidence. 17 A.R.S. Rules of Criminal Procedure, rule 32.1(e), allows an individual convicted of, or sentenced for, a criminal offense to institute a proceeding to secure appropriate relief on the ground that

> "e. Newly-discovered material facts exist, which the court, after considering.
>
> (1) The probability that such facts, if introduced would have changed the verdict, finding or sentence;
>
> (2) The diligence which would have been required to discover and produce the evidence at trial;

**394**

(3) The promptness with which the petitioner has commenced a proceeding after discovery of such facts,

may require that the conviction or sentence be vacated;"

The evidence presented with the petition consisted of an affidavit from codefendant Sodders which essentially corroborated the statements made by appellant Axley at trial and exonerated him of any complicity in the criminal acts.

At an informal conference the trial judge considered the affidavit, the pleadings, and the arguments presented. He noted the numerous contradictory statements made by Sodders during the investigation of the case and found no probability that the affidavit, had it been introduced, would have changed the verdict, finding or sentence. He further found a lack of diligence in discovering and producing the affidavit. The trial judge concluded that whether the information contained in the affidavit was true or false, the facts always had been available and were not newly discovered. The trial court denied relief and appellant appealed.

 We have reviewed the transcript of Sodders' taped interview following his arrest, the record of his sentencing hearing, as well as the affidavit. During the interview Sodders claimed Axley knew about the plans for the robbery although he admitted that Axley did not know Sodders would shoot the victim. Near the conclusion of his sentencing hearing, Sodders told the sentencing judge that Axley's involvement "was far greater than suspected." Given the conflict between these statements and the statements contained in the affidavit, we agree with the decision of the trial judge to deny post-conviction relief because

"[t]here is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character."

*State v. Sims*, 99 Ariz. 302, 310, 409 P.2d 17, 22 (1965), *cert. denied*, 384 U.S. 980, 86 S.Ct.

1880, 16 L.Ed.2d 691 (1966), citing *People v. Shilitano*, 218 N.Y. 161, 170, 112 N.E. 733, 736 (1916). Absent an abuse of discretion, we will not disturb the determination of the trial court regarding newly discovered evidence. *State v. Ford*, 108 Ariz. 404, 414, 499 P.2d 699, 709 (1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1973); *State v. Blankenship*, 99 Ariz. 60, 64, 406 P.2d 729, 731 (1965).

The judgments of conviction and the sentences are affirmed.

HOLOHAN, C. J., GORDON, V. C. J., and CAMERON and FELDMAN, JJ., concur.