NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BRIAN RAY ROBINSON, *Appellant.*

No. 1 CA-CR 14-0281
FILED 3-17-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-114034-001
The Honorable Hugh E. Hegyi, Judge

**AFFIRMED**

COUNSEL

Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**        Brian Robinson appeals from his convictions and sentences for possession of a dangerous drug for sale, misconduct involving a weapon, and possession of drug paraphernalia.  He contends the trial court erred when it denied: (1) his Rule 20 motion based upon *corpus delicti*, and (2) his request to argue the affirmative defense of inoperability of the weapon.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        The charges were brought against Robinson after narcotic detectives executed a search warrant at Robinson's residence.  Before entering the house, detectives disabled several security cameras located on the outside of the house.  Once inside the home, detectives located Robinson's girlfriend, Christina, in the living room, and Robinson's baby in the southwest bedroom.  Upon the detectives' entry, Robinson's roommate, Derek Hicks, attempted to flee out the back door, but retreated to a laundry room structure that was detached from the house.  After the detectives removed Christina and the baby from the house and determined there were no other persons present, the officers conducted a search of the home.

**¶3**        The three bedroom, two bath residence was described at trial as a "[s]ingle story, single family residential house."  In the kitchen, detectives found a digital scale and a number of micro-baggies. Detectives found a glass pipe for smoking methamphetamine, as well as documents and letters belonging to Hicks, in the northeast bedroom.  The southeast bedroom contained children's clothing and toys that were later determined to belong to two young boys who lived there but were not present at the time of the search.

---

[1]        We view the evidence, and all reasonable inferences therefrom, in the light most favorable to sustaining Robinson's convictions. *State v. Karr*, 221 Ariz. 319, 320, ¶ 2, 212 P.3d 11, 12 (App. 2008).

¶4 The southwest bedroom, where the baby was found, contained men's and women's clothing, as well as clothes for "a small child[]." In this bedroom's closet, detectives located a plastic drill case that contained 7.079 ounces of methamphetamine that had been separated into multiple baggies, as well as a 9 mm Ruger handgun. In a dresser located within this room, detectives found men's socks, tee shirts and boxers, a digital scale with white residue on it, micro-baggies, which a detective explained at trial are routinely used to package methamphetamine for sale, liquid dispensing cups containing white residue, and 9 mm bullets. Detectives also discovered documents inside and on top of the dresser bearing Christina's and Robinson's names and home address; among these documents were a W-2G form and Robinson's probation paperwork. Detectives also located medicine bottles prescribed to Robinson. Additionally, other drug paraphernalia items were scattered throughout the room.

¶5 One of the detectives testified that, in his experience, seven ounces was a considerable amount of methamphetamine that carried a street value of approximately $5,000, which signified to him that it was possessed for sale because most "street level users" generally possessed "less than a half a gram."

¶6 While the detectives were conducting their search, Christina called Robinson, who returned home at her request. Once he arrived, Robinson consented to an interview with police,[2] in which he admitted he lived at the house with Christina, three children, Hicks, and another person named Raul Acosta, and that he shared the southwest bedroom with Christina. He further admitted he sold methamphetamine a "half ounce at a time" and "earned about $100 per half ounce." Robinson also correctly identified the gun found in his closet, and explained he kept it there for protection because he had previously been robbed.

¶7 A jury found Robinson guilty on each count. For purposes of sentencing, Robinson admitted he committed the offenses for pecuniary gain, had two prior historical felony convictions, and was on probation at the time the offenses were committed. The trial court sentenced Robinson to the presumptive term of imprisonment on each count to be served concurrently, with the longest sentence equaling 15.75 years. Robinson timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of

---

[2] The interview was recorded and played at trial.

the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[3] 13-4031 and -4033(A)(1).

**DISCUSSION**

**I.     The Trial Court Did Not Abuse its Discretion by Denying Robinson's Rule 20 Motion.**

**¶8**         Robinson argues that the trial court erred in denying his Rule 20 motion, which was premised upon his argument that there was no *corpus delicti* for his admissions that he possessed the handgun and possessed the drugs for sale. According to Robinson, his confessions provided the only evidence of the crimes. "We review a ruling on the sufficiency of the evidence of *corpus delicti* for abuse of discretion." *State v. Morris*, 215 Ariz. 324, 333, ¶ 33, 160 P.3d 203, 212 (2007) (citations omitted) (italics added).[4]

**¶9**         "The *corpus delicti* doctrine ensures that a defendant's conviction is not based upon an uncorroborated confession or incriminating statement." *Id.* at ¶ 34 (italics added). Thus, "[a] defendant may not be convicted of a crime based on an uncorroborated confession without independent proof of the *corpus delicti*, or the 'body of the crime.'" *State v. Morgan*, 204 Ariz. 166, 170, ¶ 15, 61 P.3d 460, 464 (App. 2002) (citing *State v. Gillies*, 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983), and *State v. Jones*, 198 Ariz. 18, 23, ¶ 13, 6 P.3d 323, 328 (App. 2000)) (italics added). "[T]he State must establish the *corpus delicti* by showing proof of a crime and that someone is responsible for that crime." *Jones*, 198 Ariz. at 22, ¶ 12, 6 P.3d at 327 (citations omitted). "'[O]nly a reasonable inference of the *corpus delicti* need exist' before incriminating statements may be considered, and circumstantial evidence can support such an inference." *Morris*, 215 Ariz. at 333, ¶ 34, 160 P.3d at 212 (quoting *State v. Hall*, 204 Ariz. 442, 453, ¶ 43, 65 P.3d 90, 101 (2003)). The State's proof need only establish a reasonable inference that the charged crime was committed. *State v. Flores*, 202 Ariz. 221, 222, ¶ 5, 42 P.3d 1186, 1187 (App. 2002). "The evidence need not be of

---

[3]      Absent material revisions from the relevant date, we cite a statute's current version.

[4]      The State urges us to hold the *corpus delicti* doctrine is no longer valid in Arizona. Our supreme court still recognizes the validity of the doctrine, *Morris*, 215 Ariz. at 333, ¶ 33, 160 P.3d at 212, and this Court has no authority to overrule our supreme court. *State v. Foster*, 199 Ariz. 39, 41 n.1, ¶ 9, 13 P.3d 781, 783 n.1 (App. 2000) (citing *Myers v. Reeb*, 190 Ariz. 341, 342, 974 P.2d 915, 916 (App. 1997)).

the quantum of proof beyond a reasonable doubt." *Jones*, 198 Ariz. at 22, ¶ 12, 6 P.3d at 327 (citing *State v. Gerlaugh*, 134 Ariz. 164, 170, 654 P.2d 800, 806 (1982)).

**¶10**　　　　While several formulations of the doctrine have been recognized and applied, "Arizona cases have indicated that a corroborated confession may be used to establish proof of an element of the crime." *Morgan*, 204 Ariz. at 171, ¶ 17, 61 P.3d at 465 (citing *Flores*, 202 Ariz. at 222, ¶ 5, 42 P.3d at 1187, and *Jones*, 198 Ariz. 22 n.6, ¶ 12, 6 P.3d at 327 n.6). The corroborative approach "'requires there be corroborative evidence, independent of defendant's confession, which tends to prove the commission of the crime charged.'" *Id.* (quoting *State v. Parker*, 315 S.E.2d 487 (N.C. 1985), and citing John W. Strong et al., *McCormick on Evidence* § 145, at 525 (5th ed. 1999)).

**¶11**　　　　Applying the corroborative approach, the trial court found the State had provided sufficient evidence independent of Robinson's confession that Robinson engaged in the charged offenses. Specifically, the court reasoned that the fact the paraphernalia was found in the drawer with men's underpants and documents pertaining to Robinson, coupled with the detective's testimony about the normal usage amount of methamphetamine by street level users, was sufficient to sustain a finding that Robinson possessed the methamphetamine in the case in his closet "for the purposes of sale and not simply for personal consumption." The court further found there was sufficient connection between the paraphernalia and the contents of the closet to defeat a Rule 20 motion. While the court expressed some reservation with respect to the handgun, it nonetheless concluded there was sufficient evidence Robinson lived at the house, and more importantly in the same room where the handgun was recovered, for a jury to find he possessed the handgun.

**¶12**　　　　We agree with the trial court's findings. Personal documents and prescription medicine found in the bedroom support the inference that Robinson occupied the room where a large quantity of methamphetamine, and the drug paraphernalia for weighing and repackaging it, were located. Furthermore, ammunition that fit the handgun found in the closet was also located in the same dresser that contained Robinson's documents. Given this evidence, the State met its burden to establish a reasonable inference that Robinson possessed the items in the southwest bedroom even if we were to disregard Robinson's admissions. Therefore, the trial court did not abuse its discretion in denying Robinson's Rule 20 motion based upon *corpus delicti*.

¶13　　　　Robinson next argues, in the alternative, that there was insufficient evidence to convict him of possession of a dangerous drug for sale.　Robinson maintains it was possible that even though he lived in the residence, the crime of possession of a dangerous drug for sale could have been committed while he was away from the house.

¶14　　　　Sufficiency of the evidence is a question of law that we review *de novo*.　*State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011) (citing *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993)).　We will reverse a conviction based upon insufficient evidence "only if no substantial evidence supports [it]."　*State v. Henry*, 205 Ariz. 229, 232, ¶ 11, 68 P.3d 455, 458 (App. 2003) (citing *State v. Carlos*, 199 Ariz. 273, 276, ¶ 7, 17 P.3d 118, 121 (App. 2001)).　"Substantial evidence, which may be either circumstantial or direct, is evidence that a reasonable jury can accept as sufficient to infer guilt beyond a reasonable doubt."　*Id*. (citations omitted).

¶15　　　　Robinson's argument is unavailing.　As detailed above, the State provided sufficient independent evidence of Robinson's possession of a dangerous drug for sale over and above his own statements.　When taken together, the evidence and Robinson's corroborated admissions provide substantial evidence to sustain the jury's verdict.

## II.　The Trial Court Did Not Abuse its Discretion by Precluding Argument on the Weapon's Operability.

¶16　　　　After final instructions were settled, the prosecutor asked the trial court to preclude Robinson from arguing to the jury that the handgun was inoperable.　The prosecutor correctly noted that inoperability was an "affirmative defense," *see State v. Rosthenhausler*, 147 Ariz. 486, 493, 711 P.2d 625, 632 (App. 1985), and argued no evidence was presented that the handgun was inoperable.　Defense counsel countered that the burden was on the State to present evidence the gun was operable and, since no report of any test of the gun was presented at trial, she should be allowed to argue inoperability.　The trial court agreed with the prosecutor that no evidence had been presented to support a finding that the gun was inoperable, and granted his request to preclude the argument.

¶17　　　　On appeal, Robinson argues the trial court abused its discretion by failing to instruct the jury on the affirmative defense of the inoperability of the handgun and simply allowing both parties to argue the issue to the jury.　The State maintains Robinson is only entitled to a fundamental error review because Robinson neither specifically requested the trial court give such an instruction nor objected to the final instructions

given.  Robinson responds that the issue was preserved by his disagreement with the State over the allocation of the burden.  Robinson also argues that, in any case, a request for the instruction was rendered "formalistic" at best by the trial court's conclusion that no evidence supported giving the instruction.

¶18　　　We review the trial court's refusal to provide a jury instruction for an abuse of discretion and resulting prejudice.  *See State v. Ruggiero*, 211 Ariz. 262, 264, ¶ 6, 120 P.3d 690, 692 (App. 2005) (citing *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995), and *State v. Islas*, 132 Ariz. 590, 591, 647 P.2d 1188, 1189 (App. 1982)).  When a defendant does not object to a trial court's failure to give an instruction or to the instructions actually given, we review only for fundamental error.  *See State v. Finch*, 202 Ariz. 410, 415, ¶ 19, 46 P.3d 421, 426 (2002) (citing Ariz. R. Crim. P. 21.3(c), and *State v. Valenzuela*, 194 Ariz. 404, 405, ¶ 2, 984 P.2d 12, 13 (1999)).  Regardless of which standard of review we apply, the trial court here did not err by not providing the jury with the inoperability instruction.

¶19　　　A defendant "is entitled to an instruction on any theory of the case reasonably supported by the evidence."  *Bolton*, 182 Ariz. at 309, 896 P.2d at 849 (citing *State v. Shumway*, 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983)).  The entitlement arises where an instruction is supported by "'the slightest evidence.'"  *State v. Hussain*, 189 Ariz. 336, 337, 942 P.2d 1168, 1169 (App. 1997) (quoting *State v. Dumaine*, 162 Ariz. 392, 404, 783 P.2d 1184, 1196 (1989)).  A trial court does not abuse its discretion by failing to give an instruction that is unsupported by the facts.  *State v. Axley*, 132 Ariz. 383, 393, 646 P.2d 268, 278 (1982) ("'[I]nstructions must be predicated on some theory of the case which may be found in the evidence, and, when not so predicated, they should not be given, as their tendency would be to mislead the jury.'") (quoting *State v. McIntyre*, 106 Ariz. 439, 445, 477 P.2d 529, 535 (1970)).

¶20　　　For purposes of misconduct involving weapons, a firearm is defined as "any loaded or unloaded . . . weapon that will expel, is designed to expel or may readily be converted to expel a projectile by the action of an explosive."  A.R.S. § 13-3101(A)(4); *see also* A.R.S. § 13-105(19) (defining firearm similarly for purposes of the criminal code).  An exception is made for firearms in a permanently inoperable condition.  A.R.S. § 13-3101(A)(4).  The sole trial evidence Robinson points to on appeal regarding "inoperability" is one officer's testimony that the weapon was not operable when seized because it was not loaded.  This argument is unavailing.  First, the statute specifically provides that an unloaded weapon is considered a firearm.  A.R.S. § 13-3101(A)(4).  Second, the lack of ammunition, alone,

merely renders a gun temporarily, rather than permanently, inoperable. *See State v. Young*, 192 Ariz. 303, 307, ¶ 14, 965 P.2d 37, 41 (App. 1998) (finding sufficient evidence for jury to conclude a disassembled shotgun was not permanently inoperable where it could be reassembled through a simple process); *State v. Fisher*, 126 Ariz. 50, 50, 612 P.2d 506, 506 (App. 1980) (finding weapon that was missing only a replaceable firing pin was not permanently inoperable).

¶21　　　　At trial, one of the detectives, who was a certified firearms instructor, testified he "cycle[d] the gun" and checked the firing mechanism, and reported that he did not find anything "mechanically wrong" with the weapon. He also testified that "for a gun to be completely unfunctional," it needed to be "welded shut, welded over the breech" or "fill[ed] . . . with something like cement" so no bullets could go into the weapon and be fired, or the barrel needed to be disabled; however, he did not see "any of that on this weapon." Given this evidence, there was simply no basis for the trial court to have instructed the jury regarding the inoperability defense. *Axley*, 132 Ariz. at 393, 646 P.2d at 278 ("It is not error to refuse to give instructions which . . . do not fit the facts.") (citing *State v. Reinhold*, 123 Ariz. 50, 57 n.4, 597 P.2d 532, 539 n.4 (1979)). Moreover, the trial court did not err, as Robinson suggests, by precluding him from arguing inoperability during closing argument. *See State v. Hughes*, 193 Ariz. 72, 85, ¶ 59, 969 P.2d 1184, 1197 (1998) ("Counsel's questioning and argument . . . cannot make insinuations that are not supported by the evidence.") (citations omitted).

## CONCLUSION

¶22　　　　For the foregoing reasons, we affirm Robinson's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama