NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

CLIFFORD ROGERS, *Appellant*.

No. 1 CA-CR 20-0497
FILED 3-10-2022

---

Appeal from the Superior Court in Maricopa County
No. CR 2018-147928-002
The Honorable Frank S. Moskowitz, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

C A M P B E L L, Judge:

¶1        Clifford Rogers appeals his convictions and sentences for conspiracy to commit possession of dangerous drugs for sale and sale or transportation of dangerous drugs. For the following reasons, we affirm.

## BACKGROUND[1]

¶2        Police conducted a traffic stop of Rogers' truck while Vincent Whitebird was driving and Rogers and Serafina Ibarra were passengers. Rogers consented to a K9 search of the truck and officers found approximately four pounds of methamphetamine hidden near the tires, floorboard, and inside a locked safe.

¶3        The State charged Rogers with one count of conspiracy to commit possession of dangerous drugs for sale and one count of sale or transportation of dangerous drugs.[2] The State also alleged aggravating circumstances and that Rogers had historical prior felony convictions.

¶4        At trial, Rogers testified that he met Whitebird and Ibarra through a mutual friend approximately two weeks before the traffic stop. Two days before the traffic stop, Rogers was injured while moving a flatbed trailer on the friend's property, and Whitebird and Ibarra drove him to a hospital in his truck. Rogers stated that Whitebird and Ibarra had his truck for four hours until they picked him up from the hospital and drove him to another mutual friend's home. Rogers also testified that he permitted Whitebird to use his truck after his release from the hospital, explaining he

---

[1]    We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

[2]    The State charged Whitebird and Ibarra with the same counts. Whitebird pled guilty to one count of sale or transportation of dangerous drugs. The appellate record does not reflect the resolution of the charges against Ibarra.

had "no reason" to mistrust Whitebird. In fact, Rogers offered Whitebird a manual labor job that he was no longer able to perform because of his injury, and they were driving to the job site when Trooper Austill pulled them over. When questioned about drug-sale text messages on his cellular phone, Rogers testified that he did not recognize the texts and explained that his friend and his friend's daughter had access to his phone and may have sent the messages. He also unequivocally denied concealing or permitting Whitebird or Ibarra to conceal methamphetamine in his truck.

¶5 After a six-day trial, a jury found Rogers guilty as charged.[3] The jury also found one aggravating factor (committed for pecuniary gain) for each count. The superior court sentenced Rogers to nine years' imprisonment (two slightly mitigated, concurrent sentences), and he timely appealed.

## DISCUSSION

¶6 As his sole issue on appeal, Rogers contends that the State's failure to extend immunity to Whitebird violated his right to a fair trial. In making this claim, Rogers implicitly argues that the State infringed on his constitutional right to compulsory process, thereby depriving him of the ability to secure the testimony of an essential defense witness. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have compulsory process for obtaining witnesses in his favor."); *see also* Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have the right . . . to have compulsory process to compel the attendance of witnesses in his own behalf.").

¶7 Because Rogers failed to raise this claim in the superior court, we review it only for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005). Fundamental error goes to the foundation of the case, deprives the defendant of a right essential to his defense, or is of such magnitude that the defendant could not possibly have received a fair trial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Under fundamental error review, the defendant bears the burden of demonstrating both error and resulting prejudice. *Henderson*, 210 Ariz. at 567, ¶ 20.

¶8 Before trial, Rogers' first attorney gave notice of her intent to call Whitebird as a witness and moved for the appointment of counsel on

---

[3] A third jury found Rogers guilty after the superior court declared two mistrials due to a hung jury and the COVID-19 pandemic.

his behalf. The superior court appointed counsel for Whitebird, and she informed the parties that Whitebird intended to invoke his Fifth Amendment right to remain silent and refuse to testify at trial. In response to this disclosure, Rogers' attorney gave notice that she intended to introduce at trial a written statement Whitebird had provided to both Rogers and the State through counsel.

¶9            At a hearing on the matter, Rogers' attorney presented the superior court with a handwritten letter signed by Whitebird, stating:

> I, Vincent Wayne Whitebird, would like to notify the court of my codefendants [i]nnocen[c]e. Clifford Rogers and Sarafina Ibar[r]a had no knowledge of me placing the meth in Mr. Rogers [t]ruck. I am taking full responsibility for those actions. It is not right or fair to them being held on charges they are not guilty of.

Rogers' attorney argued that Whitebird had no constitutional right to refuse to testify because he already pled guilty and had no "charges pending against him." While acknowledging that the prosecutor had not afforded Whitebird "any sort of immunity," Rogers' attorney asserted "that any objection" based on lack of "immunity or otherwise" could be resolved by the court restricting the scope of questions at trial.

¶10           In response to defense counsel's argument, Whitebird's attorney told the superior court that Whitebird reasonably feared he would be exposed to additional charges by testifying. When the court asked Whitebird's attorney to specify such "potential charges," she pointed to Whitebird's post-arrest statements to police implicating Rogers and asserted he could be charged with false reporting to a police officer. Although the prosecutor stressed that he did not object to Whitebird testifying, he concurred with Whitebird's attorney that by doing so, Whitebird could expose himself to additional charges.

¶11           After hearing argument, the superior court concluded that Whitebird had a Fifth Amendment right not to testify and accordingly quashed defense counsel's subpoena for his appearance at trial. At defense counsel's prompting, the court also found that Whitebird was unavailable as a witness at trial because of his invocation of his right not to incriminate himself. Despite the court's unavailability finding, Rogers' subsequent defense attorney made no attempt to introduce Whitebird's letter at trial.

¶12           We generally review de novo questions regarding a defendant's constitutional right to compulsory process. *See State v. Sanchez-*

*Equihua*, 235 Ariz. 54, 56, ¶ 7 (App. 2014). While the Sixth Amendment guarantees a defendant the "right to compel witnesses to testify," a defendant's right to compulsory process must yield to a witness's Fifth Amendment privilege to remain silent. *State v. Rosas-Hernandez*, 202 Ariz. 212, 216, ¶ 10 (App. 2002). "To validly invoke Fifth Amendment rights, a witness must demonstrate a reasonable ground to apprehend danger from being compelled to testify." *Id*. at ¶ 11.

**¶13**        In his appellate briefing, Rogers acknowledges that Whitebird "faced a reasonable apprehension of criminal prosecution for the crime of false reporting to a law-enforcement agency" if he testified at trial in a manner consistent with his handwritten letter. Given that admission, Rogers also concedes that the superior court "correctly denied" his request to compel Whitebird's testimony. Accordingly, Rogers challenges only the prosecutor's unwillingness to grant Whitebird immunity, which resulted in his inability to secure Whitebird's testimony at trial.

**¶14**        The authority to grant immunity lies squarely with the State, A.R.S. § 13-4064, and "it is a matter for prosecutorial discretion to decide when the public interest would be best served by a grant of immunity." *State v. Jeffers*, 135 Ariz. 404, 424 (1983). Despite this general proposition, Arizona case law recognizes that due process may require the State to grant immunity to a defense witness if: (1) the defendant *would otherwise* be unable to present clearly exculpatory evidence and the State has no strong interest in withholding immunity, or (2) the prosecutor engaged in misconduct. *See State v. Fisher*, 141 Ariz. 227, 244 (1984) (abrogation on other grounds recognized by *State v. Wilson*, 237 Ariz. 296, 299, ¶ 12 (2015)) (concluding the defendant failed to present evidence that a witness "if immunized, would offer evidence that was clearly exculpatory and essential to the defense's case" sufficient to "trigger" a due process imperative to immunize the witness); *see also State v. Axley*, 132 Ariz. 383, 388 (1982) (concluding no basis to compel immunity for a defense witness absent evidence that the witness's testimony was both "clearly exculpatory and essential"); *State v. Doody*, 187 Ariz. 363, 376 (App. 1996).

**¶15**        As a preliminary matter, we note that although Rogers claims he "sought immunity" for Whitebird in the superior court, the record reflects that defense counsel only: (1) notified the superior court and the prosecutor that Rogers would seek admission of Whitebird's letter at trial in the event Whitebird refused to testify; and (2) argued that the court could effectively address Whitebird's self-incrimination concerns by limiting the scope of questioning at trial. Rogers has not cited, and our review of the

record has not revealed, anything to substantiate his claim that he requested the State grant Whitebird immunity in the superior court.

¶16  Properly framed, the narrow question before us is whether due process compelled the State to grant Whitebird immunity. Rogers has not alleged that the prosecutor engaged in misconduct to dissuade Whitebird from testifying, so he bears the burden of demonstrating that Whitebird's testimony was both essential to his defense and clearly exculpatory, and that the State had no compelling reason to withhold immunity.

¶17  An out-of-court statement offered for its truth is generally inadmissible. Ariz. R. Evid. (Rule) 801(c); 802. However, an out-of-court statement declared by an unavailable witness *is* admissible when offered for its truth if the statement is contrary to the declarant's interests and corroborating circumstances indicate its trustworthiness. Ariz. R. Evid. 804(a), (b)(3).

¶18  Applying Rule 804(b)(3) to these facts, the statements contained in the handwritten letter are contrary to Whitebird's penal interests, and therefore fall within the scope of the rule's hearsay exception. *See Fisher*, 141 Ariz. at 245 (holding statements that implicate the declarant in a crime are statements against interest for purposes of Rule 804(b)(3)). While Whitebird's plea agreement resolved his drug charges, it does not insulate him from culpability for false reporting to a police officer. Moreover, although the prosecutor initially indicated that he may raise a foundational objection to defense counsel's introduction of the handwritten letter at trial, he later agreed that the letter had been transmitted directly from court-appointed counsel and implicitly conceded the legitimacy of its origin.

¶19  On this record, Rogers has failed to demonstrate that he was prevented from introducing evidence of Whitebird's exculpatory statements at trial. In fact, Rogers concedes that had Whitebird testified, he intended simply to elicit testimony consistent with the declarations contained in the letter. Rogers does not suggest that the superior court would have excluded the letter at trial, and nothing in the record would support such a contention. Instead, he argues that the letter cannot be considered as part of the due process calculus because defense counsel did not offer it at trial. But due process does not demand that the State extend immunity to a witness based on defense counsel's decision to forgo other means of introducing the same exculpatory evidence. Rather, immunity may only be compelled if a defendant *would otherwise be prevented* from

presenting the exculpatory evidence at trial. *See Fisher*, 141 Ariz. at 244; *Axley*, 132 Ariz. at 388. Because Whitebird's handwritten letter documented the exculpatory evidence at issue, and the letter was admissible under Rule 804(b)(3)'s hearsay exception given the superior court's unavailability finding, there was no basis to require the prosecutor to extend immunity to Whitebird.[4]

**CONCLUSION**

¶20        Accordingly, we affirm Rogers' convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:        JT

---

[4]        We need not address Rogers' assertion, raised for the first time on appeal, that Whitebird "may" have had "an understanding" with the prosecutor, "to obtain the plea agreement," that he "would need to refrain from testifying" in Rogers' trial. A defendant cannot satisfy his burden of proving prejudice under fundamental-error review by raising speculative claims. *See State v. Crain*, 250 Ariz. 387, 396, ¶ 31 (App. 2021).